1  BRYAN WILSON (BAR NO. 138842)
   Email: BWilson@mofo.com
2  MARC J. PERNICK (BAR NO. 160591)
   Email: MPernick@mofo.com
3  LAURA R. MASON (BAR NO. 252251)
   Email: LMason@mofo.com
4  MORRISON & FOERSTER LLP
   755 Page Mill Road
5  Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
6  Facsimile: (650) 494-0792

**ORIGINAL FILED**

DEC 1 4 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7  Attorneys for Defendants
   KONICA-MINOLTA SYSTEMS LABORATORY, INC.,
8  AND PAUL CATTRONE

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  ALTAVION, INC., a California corporation,       Case No.    07   6358

13                 Plaintiff,                                    MHP

14         v.                                       DEFENDANTS' NOTICE OF
                                                    REMOVAL OF ACTION UNDER
15  KONICA-MINOLTA SYSTEMS                          28 U.S.C. § 1441(b)
    LABORATORY, INC., a corporation; Paul
16  Cattrone, AN INDIVIDUAL; and DOES 1
    through 50, inclusive,
17
                   Defendants.
18

19  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

20        PLEASE TAKE NOTICE THAT Konica Minolta Systems Laboratory, Inc. and Paul

21  Cattrone ("Defendants") hereby remove this action from the Superior Court of the State of

22  California for the County of San Mateo to the United States District Court for the Northern

23  District of California pursuant to 28 U.S.C. §§ 1331 and 1441. Please take further notice that a

24  true copy of this Notice of Removal is being filed with the Clerk of the San Mateo Superior

25  Court.

26

27

28

NOTICE OF REMOVAL
CASE NO.
pa-1214559

1

**JURISDICTION**

1.     Subject Matter Jurisdiction. As discussed in greater detail below, this Court has subject matter jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1441.

2.     Supplemental Jurisdiction. This court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

3.     Intradistrict Assignment. This case is not subject to assignment in a particular location or division of the Court pursuant to Civil L.R. 3-2(c) or Civil L.R. 3-5(a).

**PROCEDURAL FACTS**

4.     On November 9, 2007, Plaintiff filed a Complaint against Defendants in the San Mateo Superior Court entitled *Altavion, Inc. v. Konica-Minolta Systems Laboratory, Inc., et al.*, Case No. CV 467662.   True and correct copies of the Summons and Complaint are attached collectively as Exhibit A.  The Complaint alleges seven causes of action that include Misappropriation of Trade Secrets, Conversion, Breach of Confidentiality and Non-Disclosure Agreement, Unjust Enrichment, Unfair Business Practices, Fraud (Misrepresentation), and Fraud (Concealment).

5.     On November 14, 2007, Plaintiff served Konica-Minolta with the Summons and Complaint.  Service was effected on Paul Cattrone on December 9, 2007, based on the agreement of counsel to accept service on Mr. Cattrone's behalf.  This notice of removal is therefore timely under 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days of Defendants' receipt of the Complaint.

6.     On December 11, 2007, in San Mateo Superior Court, Defendants filed an Ex Parte Application for an Order Extending Time to Respond to the Complaint that included a motion, a declaration, and a proposed order.  Plaintiff had notice of this motion and had previously stipulated to it.  The motion was granted on the same day, and set Defendants' deadline for responding to the Complaint as January 14, 2008.  Defendants' response to the Complaint is now due on January 14, 2008.  The motion, order, declaration, and notice of entry of order are attached collectively as Exhibit B.  Defendants are informed and believe that the

1  pleadings attached as Exhibits A and B comprise all of the pleadings currently on file in the state

2  court action.

3                              **BASIS FOR REMOVAL**

4      7.      This Court has original subject matter jurisdiction over this case because the case

5  involves substantial questions of patent law, putting it within the purview of 28 U.S.C. § 1338(a).

6  At a minimum, § 1338(a) is implicated by Plaintiff's sixth cause of action for fraud

7  (misrepresentation) and by Plaintiff's prayer for relief, which seeks to restrain Defendants from

8  exercising their federal patent rights.

9      8.      Under § 1338(a), federal courts have jurisdiction over "any civil action arising

10  under any Act of Congress relating to patents . . . ." An action "arises under" patent law if "the

11  plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

12  patent law, in that patent law is a necessary element of one of the well pleaded claims." *Conroy*

13  *v. Fresh Del Monte Produce Inc.*, 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004) (citing

14  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)).

15      9.      A cause of action that requires an inventorship analysis arises under patent law for

16  purposes of federal jurisdiction. *MCV. Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1571

17  (Fed. Cir. 1989). This is because, unlike ownership, which is often a matter of state contract law,

18  "inventorship is a question of who actually invented the subject matter claimed in a patent."

19  *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993).

20      10.      Altavion's cause of action for misrepresentation alleges that Defendants defrauded

21  Altavion out of its right to have Dr. Moussa, Altavion's founder, named as an inventor on

22  Konica-Minolta's patents. (Exhibit A, Compl. ¶ 63.) Resolution of this claim will require the

23  Court to determine Dr. Moussa's contribution to the claimed inventions, if any. Accordingly, the

24  claim requires an inventorship analysis giving this Court jurisdiction under § 1338(a).

25      11.      Federal jurisdiction is also proper because Plaintiff seeks to temporarily,

26  preliminarily, and permanently restrain Defendants from "seeking to exploit any rights, either

27  directly or through third parties" with respect to ten (10) of Defendants' "U.S. [p]atent

28  [a]pplications and any related applications or subsequently issued patents." (Ex. A, Compl. at

1    Prayer For Relief 1(A).)  Whether Plaintiff is entitled to this form of relief will depend, for the

2    reasons discussed above, on whether Dr. Moussa should have been named as an inventor on the

3    Konica-Minolta patents.  Accordingly, an inventorship analysis is required and this Court has

4    jurisdiction.

5         12.    Federal jurisdiction is also proper because Plaintiff's requested relief seeks to

6    interfere with Defendants' federally created patent rights, and to restrain and enjoin Defendants

7    from exercising their rights thereunder.  *See Air Prod. & Chem., Inc. v. Reichhold Chem., Inc.*,

8    755 F.2d 1559, 1562 (Fed. Cir. 1985) ("A court must review and analyze the plaintiff's pleadings,

9    *with special attention directed to the relief requested by the plaintiff*, in making the determination

10   as to whether a cause of action arises under the patent laws." (emphasis added)).

11        Accordingly, Defendants hereby give notice that the above action now pending in the

12   Superior Court of the State of California for the County of San Mateo is removed in its entirety to

13   this Court.

14   Dated: December 14 , 2007          BRYAN WILSON
                                        MARC J. PERNICK
15                                      LAURA R. MASON
                                        MORRISON & FOERSTER LLP
16

17                                      By: _____
18                                          Marc J. Pernick

19                                      Attorneys for Defendants
20                                      KONICA-MINOLTA SYSTEMS
                                        LABORATORY, INC., AND PAUL
21                                      CATTRONE

22

23

24

25

26

27

28

1    BRYAN WILSON (BAR NO. 138842)
     Email: BWilson@mofo.com
2    MARC J. PERNICK (BAR NO. 160591)
     Email: MPernick@mofo.com
3    LAURA R. MASON (BAR NO. 252251)
     Email: LMason@mofo.com
4    MORRISON & FOERSTER LLP
     755 Page Mill Road
5    Palo Alto, California 94304-1018
     Telephone: (650) 813-5600
6    Facsimile: (650) 494-0792

7    Attorneys for Defendants
     KONICA-MINOLTA SYSTEMS LABORATORY, INC.,
8    AND PAUL CATTRONE

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12   ALTAVION, INC., a California corporation,        Case No.

13                      Plaintiff,                    **CERTIFICATION OF
                                                      INTERESTED ENTITIES OR
14           v.                                       PERSONS**
                                                      **Civil Local Rule 3-16, FRCP 7.1**
15   KONICA-MINOLTA SYSTEMS
     LABORATORY, INC., a corporation; Paul
16   Cattrone, AN INDIVIDUAL; and DOES 1
     through 50, inclusive,
17
                        Defendants.
18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to Civil L.R. 3-16 and Federal Rule of Civil Procedure 7.1, the undersigned

2    certifies that the following listed persons, associations of persons, firms, partnerships,

3    corporations or other entities either (i) have a financial interest in the subject matter in

4    controversy or in a party to the proceeding, (ii) have a non-financial interest in that subject matter

5    or in a party that could be substantially affected by the outcome of this proceeding, (iii) are parent

6    corporations of Konica-Minolta Systems Laboratory, Inc., or (iv) are publicly held corporations

7    owning 10% or more of the stock of Konica-Minolta Systems Laboratory, Inc:

8    1.    Konica Minolta System Laboratory, Inc. is a wholly owned subsidiary of Konica

9    Minolta Holdings, U.S.A., Inc., a New Jersey corporation.

10    2.    Konica Minolta Holdings, Inc., a publicly-traded Japanese corporation, has a

11    greater than 10% ownership interest in Konica Minolta Holdings, U.S.A., Inc.

12

13    Dated: December 14, 2007

BRYAN WILSON
14    MARC J. PERNICK
LAURA R. MASON
15    MORRISON & FOERSTER LLP

16
By:
17    Marc J. Pernick

18    Attorneys for Defendants
KONICA-MINOLTA SYSTEMS
19    LABORATORY, INC., AND PAUL
CATTRONE

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):
MILLSTONE PETERSON & WATTS, LLP, Attorneys at Law
GLENN W. PETERSON, ESQ. (SBN 126173)
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
TELEPHONE NO. (916) 780-8222    FAX NO. (916) 780-8775
ATTORNEY FOR (Name): Plaintiff ALTAVION, INC., a California Corporation

FOR COURT USE ONLY

**RECEIVED**

**Nov 09 2007**

SUPERIOR COURT
CIVIL DIVISION

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City  CA 94063
BRANCH NAME: Southern Branch, Hall of Justice and Records

CASE NAME: Altavion, Inc. v. Konica-Minolta Systems Laboratory, Inc. et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [✓] Unlimited     [ ] Limited | [ ] Counter    [ ] Joinder | **CIV 467662** |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE |
| | | DEPT |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[✓] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [✓] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [✓] monetary    b. [✓] nonmonetary; declaratory or injunctive relief    c. [ ] punitive

4. Number of causes of action (specify): Seven (7)

5. This case [ ] is [✓] is not    a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 8, 2007

GLENN W. PETERSON
(TYPE OR PRINT NAME)

▶ /s/Glenn W. Peterson
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403;
Standards of Judicial Administration, § 3.10
www.courtinfo.ca.gov

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Complex Cases**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

**SUM-100**

| | |
|---|---|
| **SUMMONS**<br>*(CITACION JUDICIAL)* | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
KONICA-MINOLTA SYSTEMS LABORATORY, INC., a corporation;
PAUL CATTRONE, an individual; and DOES 1 through 50, inclusive

**E-FILED**
SAN MATEO COUNTY
*Nov 09 2007*
Clerk of the Superior Court
By ___U. FINAU___
DEPUTY CLERK

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALTAVION, INC., a California Corporation

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you.   Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of San Mateo<br>400 County Center<br>Redwood City, CA 94063 | CASE NUMBER:<br>*(Número del Caso):* **CIV 467662** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
MILLSTONE PETERSON & WATTS, LLP, Attorneys at Law   GLENN W. PETERSON, ESQ. (SBN 126173)
2267 Lava Ridge Court, Suite 210, Roseville, CA 95661     Phone: (916) 780-8222

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* **11/09/07** | **JOHN C. FITTON** | Clerk, by ___U Finau___<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |

*www.accesslaw.com*

1
2  **MILLSTONE, PETERSON & WATTS, LLP**
   *Attorneys at Law*
3  GLENN W. PETERSON, ESQ. (SBN 126173)
   2267 Lava Ridge Court, Suite 210
4  Roseville, CA 95661
   Telephone: (916) 780-8222
5  Fax No: (916) 780-8775

6  **COSTELLO LAW CORPORATION**
   JOHN P. COSTELLO, ESQ. (SBN 161511)
7  PAMELA W. BERTANI, ESQ. (SBN 182672)
   331 J Street, Suite 200
8  Sacramento, California 95814
   Telephone No.: (916) 441-2234
9  Fax No: (916) 441-4254

10  *Attorneys for Plaintiff Altavion, Inc.*

11

**E-FILED**
**SAN MATEO COUNTY**

Nov 09 2007

Clerk of the Superior Court
By ____U. FINAU____
DEPUTY CLERK

12          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                    **COUNTY OF SAN MATEO**

14  ALTAVION, INC., a California Corporation,     )   Case No.  **CIV 467662**
                                                  )
15                                                )   **COMPLAINT FOR:**
                          Plaintiff,              )
16                                                )   (1) MISAPPROPRIATION OF TRADE
              vs.                                 )       SECRETS;
17                                                )
                                                  )   (2) CONVERSION;
18  KONICA-MINOLTA SYSTEMS                        )
    LABORATORY, INC., a corporation;             )   (3) BREACH OF CONFIDENTIALITY
19  PAUL CATTRONE, an individual; and DOES 1     )       AND NON-DISCLOSURE
    through 50, inclusive,                        )       AGREEMENT;
20                                                )
                          Defendants.             )   (4) UNJUST ENRICHMENT;
21                                                )
                                                  )   (5) UNFAIR BUSINESS PRACTICES;
22                                                )
                                                  )   (6) FRAUD (MISREPRESENTATION);
23                                                )       AND
                                                  )
24                                                )   (7) FRAUD (CONCEALMENT).
                                                  )
25                                                )   _____
                                                  )
26                                                )   **COMPLEX CIVIL CASE**
27  _____

28

MILLSTONE
PETERSON &
WATTS, LLP

**PARTIES**

1.     Plaintiff ALTAVION, INC. ("Plaintiff" or "ALTAVION") is a California corporation and at all relevant times its business headquarters have been located in Santa Clara County, California.

2.     Defendant PAUL CATTRONE is an individual resident of Alameda County.

3.     Defendant KONICA-MINOLTA SYSTEMS LABORATORY, INC. ("KONICA-MINOLTA") is a corporation registered with the State of California and domiciled in San Mateo County, California. ALTAVION is informed and believes and based thereon alleges that Konica Corporation ("Konica") and the Minolta Co., Ltd. ("Minolta") merged to create KONICA-MINOLTA in our about October 2003 ("merger"). As a result of this merger, KONICA-MINOLTA became the successor in interest to the negotiations and agreements identified herein below.

4.     Venue is proper in San Mateo County because the defendants committed the tortious acts here and the contracts at issue in this action were to be performed here, and plaintiff's intellectual property has been misappropriated and used here.

5.     ALTAVION is ignorant of the true names and capacities of defendants sued herein as DOES 1 THROUGH 50, and therefore sues these defendants by such fictitious names. ALTAVION will amend this complaint to state the true names and capacities when ascertained. ALTAVION is informed and believes and based thereon alleges that each of the fictitiously named defendants is responsible in some capacity for the occurrences and damages alleged herein, and that Defendants proximately caused ALTAVION'S damages as set forth below. References herein to "Defendants" shall include KONICA-MINOLTA and each of those fictitiously named.

6.     ALTAVION is informed and believes and based thereon alleges that at all times mentioned in this complaint, each of the Defendants including DOES 1 through 50, were individuals or business entities who were or acted as the agents, employees, subsidiaries, affiliates or co-conspirators of KONICA-MINOLTA, and in doing the acts alleged in this complaint, were acting within the course and scope of that agency, employment, affiliation or conspiracy. ALTAVION further alleges on information and belief that each of the DOE defendants was somehow legally

///

2

1    responsible for causing the damages alleged herein, converting the property as alleged herein, or is

2    otherwise responsible for its wrongful disposition.

3    **GENERAL ALLEGATIONS**

4    7.    Dr. Ali Moussa founded ALTAVION in March 2000 with the objective of developing

5    and advancing reliable methods of optimizing digital document security. With the proliferation of

6    digital document use to consummate an increasing number of marketplace transactions, document

7    security technology is an essential tool for ensuring the veracity of such transactions and authenticity

8    of corresponding digital documentation. Under Dr. Moussa's leadership, ALTAVION has created

9    and perfected a suite of digital document security solutions employing a novel set of platform

10   technologies, which are the first of their kind to provide the dual functionality of *document*

11   *authentication* via the use of novel stamp embedding techniques and *document integrity assessment*

12   via novel tamper detection techniques. ALTAVION'S proprietary digital document security

13   solutions, collectively referred to as Digital Stamping Technology ("DST"), apply to the pixelized

14   rendering of any given digital document, as opposed to the raw data contained in such documents.

15   8.    ALTAVION'S DST solutions and corresponding intellectual property comprise two

16   primary components, a Digital Stamp Creator and a Digital Stamp Verifier, both of which are

17   necessary to provide an end-to-end system. The Digital Stamp Creator extracts essential image data

18   from digital documents, which data is optimally embedded within a corresponding digital stamp by

19   way of a primary component analysis function and original transformation function. The extracted

20   essential image data provides adequate information to verify the integrity of a digitally stamped

21   document within a defined resolution. Extracted essential image data in conjunction with additional

22   metadata is then encoded and encrypted into an original multidimensional color barcode using

23   reliable data encryption techniques. In addition to encryption, the combined essential image and

24   metadata may further be secured through the use of a tamper-proof time stamp and a digital

25   signature also embedded with the essential data in the digital stamp. The resulting barcode (i.e.,

26   digital stamp) is subsequently embedded and tightly bound within the corresponding digital

27   document page receiving the stamp; thus creating what ALTAVION calls Self-Authenticated

28   Document since the stamp contains the data necessary to authenticate the associated page of the

3

1    document. To this end, the barcode may be embedded as a surface image on the digital document,

2    or alternatively embedded as a digital object attachment to the document. In order to assess

3    document authenticity or integrity, the Digital Stamp Verifier either reads the data object or extracts

4    data from an embedded multidimensional barcode contained within the digital document.

5    Thereafter, the Digital Stamp Verifier decrypts, decodes and compares this data against data

6    contained in the stamped document. Thus, ALTAVION'S novel Digital Stamping Technology

7    provides a mechanism for reliably verifying whether a document is authentic – and for locating

8    specific points of alternations if document integrity has been breached.

9        9.    ALTAVION'S DST suite of document authentication and integrity assessment

10    solutions includes various technologies created to optimize or otherwise enhance the platform DST

11    technology – all of which ALTAVION disclosed in detail to defendant KONICA-MINOLTA

12    commencing in the Fall of 2002. Specifically in this regard, the DST suite includes Essential Image

13    Extraction techniques, which employ authentication and integrity algorithms to determine whether a

14    document has sustained any alterations after being stamped, and if so, exactly where those

15    alterations were made. The DST suite also includes Multi-Dimensional Color Barcode technology,

16    which addresses color matching and decoding and employs color in a two dimensional barcode as a

17    means of providing an additional layer of information encoding space within the same footprint.

18    The Multi-Dimensional Color Barcode technology provides a method for introducing into color DST

19    barcode. Correspondingly, through the use of color as an additional data layer, the size of a stamp is

20    decreased by approximately 1/3 the original size and yet maintain the same amount of information

21    comprising a black and white stamp. The DST suite further includes an original Pixel-Level

22    Encryption technology, multiple applications of Software Stamp Engine Embedding technology, and

23    various Scanned Image Optimization techniques to enhance the quality of scanned images.

24        10.    In or about the Fall of 2002, Dr. Moussa initially met with Minolta representatives in

25    Foster City, California. The meeting commenced for the purpose of discussing the prospect of

26    ALTAVION providing product enhancement resources for Minolta's "Page Scope Router" product,

27    which at the time was used in conjunction with and to enhance Minolta scanner devices.

28    ///

4

11.    Minolta executives met with Dr. Moussa and ALTAVION representatives on multiple occasions during the time period between the Fall of 2002 and the Fall of 2003. As a direct result of these meetings and for the purpose of continuing negotiations regarding ALTAVION'S provision of product enhancement resources, in or about December 2003 ALTAVION and Minolta executed and entered into a Confidentiality and Mutual Non-Disclosure Agreement ("NDA"). After the merger, KONICA-MINOLTA became Minolta's successor in interest to the NDA.

12.    The NDA states, *inter alia*, that all information and documents provided to Minolta by ALTAVION under the NDA, including documents or other media that contain such information, shall remain ALTAVION'S exclusive property. In addition, the NDA states that if a transaction between the parties was not consummated within one year of the NDA execution date, or at any time a party requests, a party that has received the other party's proprietary information must return all such information received and certify destruction of any information containing or derived from the disclosed proprietary information.

13.    Dr. Moussa and other ALTAVION representatives met with defendant KONICA-MINOLTA on numerous occasions throughout the Fall of 2003 and Spring of 2004 for the purpose of negotiating prospective terms by which ALTAVION'S DST technology would be purchased by KONICA-MINOLTA via license and incorporated into and used in conjunction with defendant KONICA-MINOLTA'S scanner products. During this period, Mr. Hiroshi Tomita, Vice President of Imaging Technology for defendant KONICA-MINOLTA, was the primary contact with ALTAVION. Mr. Tomita visited ALTAVION on numerous occasions to discuss ALTAVION'S provision of product configurations for defendant KONICA-MINOLTA and on several occasions Mr. Tomita was accompanied by other KONICA-MINOLTA executives and engineers, who likewise expressed their interest in incorporating ALTAVION'S technology into defendant KONICA-MINOLTA scanner devices. Correspondence dated December 15, 2003 addressed to Dr. Moussa and signed by Mr. Tomita as representative of KONICA-MINOLTA'S repeatedly expressed interest in licensing and incorporating ALTAVION'S DST solutions into KONICA-MINOLTA products. Specifically in this regard, Mr. Tomita stated:

/ / /

On behalf of Konica-Minolta, I would like to express our appreciations [sic] for your cooperation and efforts for bringing our attention to the valuable and exciting technologies your company has developed and is continuing to do so. It gives me pleasure to express our deep interests in your company, its technologies and system solutions. At Konica-Minolta we are studying using your unique technology for digital stamping for possible use in multiple applications in current and future products and for jointly developing it further for even better utilization. Although we have not officially decided yet, I am very interested in your technology and we are studying the possibility [of] working with you towards such a mutually beneficial strategic relationship.

This correspondence represents only one of many instances in which KONICA-MINOLTA expressly stated its interest in licensing and incorporating ALTAVION'S DST intellectual property into several of its existing and future products.

14.    During the meetings and related communications that took place between ALTAVION and defendant KONICA-MINOLTA throughout the Fall of 2003 and Spring of 2004, defendant KONICA-MINOLTA repeatedly requested that ALTAVION provide detailed information and explanations regarding ALTAVION'S DST intellectual property, including demonstrations to show how ALTAVION'S technology could be embedded within and used in conjunction with defendant KONICA-MINOLTA'S various products. KONICA-MINOLTA employee Wei Ming communicated with Dr. Moussa directly on numerous occasions during this time period and requested detailed information regarding DST components, particularly with respect to color barcode creation, verification and stamp engine/verifier embedding techniques. In evaluating DST functionality, Ms. Ming tested various DST system components and upon her requests ALTAVION provided multiple versions of proprietary executables that achieved barcode creation, stamp verification and component embedding.

15.    Following multiple meetings, communications and information exchanges between ALTAVION and defendant KONICA-MINOLTA during the Fall of 2003, in early 2004 ALTAVION provided defendant KONICA-MINOLTA with an initial evaluation copy of its DST stamping engine to create a barcode for authenticating paper documents.

16.    KONICA-MINOLTA's independent consultant, defendant Paul Cattrone, oversaw the evaluation of ALTAVION'S DST software and correspondingly prepared a comprehensive report entitled Altavion Digital Stamping Software Evaluation, which summarizes KONICA-MINOLTA'S

COMPLAINT

1  analysis of the initial DST evaluation software and concludes that the DST software functioned

2  successfully.  To this end, the Evaluation expressly states:

3      Altavion is the first available solution for creating a machine readable authentication
       barcode which can be later used to not only authenticate the document, but on false
4      authenticity, locate the areas within the document where tampering or alteration has
       occurred.  The Altavion software uses a fragile digital stamping method.  A fragile
5      method is a good solution for finding the smallest amount of document modification –
       malicious or not – as  4  x  4  pixel level changes can be detected with the Altavion
6      evaluation software.

7                                        …

8      In all cases, the verification software was able to successfully authenticate unaltered
       digital documents.  For most cases, when a document was found to be altered and not
9      authentic, the software was able to successfully identify the area within the document –
       graphic or text – which had been tampered with.
10
                                        …
11

12     The strength of the Altavion digital stamping algorithm is its ability to extract essential
       information from a digital image of a document and compress that information into less
13     than 8 Kbytes.  This essential information contains enough information about the original
       document that 5 or more consecutive pixel alterations can be detected in a 25 x 25 pixel
14     grid block.

15     17.    A February 27, 2004 Development Planning Report ("DPR") prepared by defendant

16  KONICA-MINOLTA articulates KONICA-MINOLTA'S project development strategy for

17  employing ALTAVION'S DST solutions based ostensibly in large part on the Altavion Digital

18  Stamping Software Evaluation report prepared by Mr. Cattrone.  The DPR expressly states:

19     This project will develop a Digital Stamping solution for use as a Konica-Minolta
       document authentication security technology.  The solution will be built as two SDKs –
20     Digital Stamp Creation SKD and Digital Stamp Authentication & Integrity Check SDK.
       Both SDKs will be built around a digital stamping core functionality component.
21     Altavion will provide the core functionality component as they have a patent pending
       digital stamping technology which can create and verify authentic documents as well as
22     discover tamper locations in unauthentic documents.  With Altavion technology a small
       amount of essential data extracted from the image is required and can be encoded into a
23     digital stamp as small as ½" x ½".  Konica-Minolta Systems Labs will drive the
       development of Altavion's core technology to provide Konica [-] Minolta with a solution
24     that satisfies the basic requirements for creation and verification of a digitally stamped
       document.  Konica-Minolta Systems Labs will also develop a [sic] SDK around the
25     Altavion core component API to provide an interface for the creation of Digital Stamping
       technologies and products.
26
                                        …
27
       Competitive edge of this proposed theme.  Altavion provides a digital stamping
28     technology utilizing a different image analysis technique which works on both images
       and text documents to provide authentication and integrity checking based on

                                           7

customizable parameters.  The amount of data required to authenticate and verify integrity with the Altavion method is their key differentiating technology.  Where as [sic] the Canon patent reduces the original documents size in its approach to embed 2D barcodes, the Altavion solution does not apply any transformation to the original document as the stamp can be generated as small as ½" x ½'.

...

Altavion has demonstrated their technology to Konica-Minolta in basic form.  Canon has not yet demonstrated their digital stamping technology in a commercially available product.  By developing a [sic] SDK around Altavion's digital stamping core technology, Konica-Minolta will develop competing patentable technologies and marketable products which work to close the Printer/Scanner Loop to provide document authenticity and integrity validation regardless of digital or print form.

The February 2004 DPR also details, *inter alia*, defendant KONICA-MINOLTA'S patent application plan and specifically states in this regard:

With the completion of Phase 2: Closing the Printer/Scanner Loop, a patent could be filed which describes an Altavion technology based method for creating self-authentic with embedded integrity data documents which can be authenticated from digital or print form.  With the completion of Phase 7: Stamp Placement Enhancements, a patent could be filed which describes a self-authenticating digital stamping method which does not obscure the original document content.

18.    In or about April and May 2004 Mr. Tomita consummated defendant KONICA-MINOLTA'S purchase of a formal evaluation copy of ALTAVION'S DST software comprising algorithmic steps implemented as executable code specifically packaged for evaluation by defendant KONICA-MINOLTA.  ALTAVION delivered the formal DST software evaluation copy in two phases, with phase one delivery occurring in our about April 2004 and phase two delivery occurring in or about May 2004.  Accordingly, KONICA-MINOLTA issued a separate purchase order with each delivery phase in the amount of $25,000 (twenty five thousand dollars) per delivery.  KONICA-MINOLTA paid a total of $50,000 for complete delivery of the DST software evaluation copy.  The formal evaluation copy of the DST software, like the initial evaluation copy, performed successfully within the parameters of KONICA-MINOLTA evaluation criteria.

19.    Defendant Cattrone thereafter requested a special DST software evaluation copy, which KONICA-MINOLTA intended to use to evaluate applications for adding filter components.  In this regard, ALTAVION delivered an interface for filter additions comprising filters for removing background colors and randomly scattered noise that may occur in scanned images.  ALTAVION also supplied source code examples and related components to facilitate source code tracking.  The

8

1    special DST software evaluation copy performed successfully within the parameters of KONICA-

2    MINOLTA evaluation criteria.    Plaintiff alleges on information and belief that Cattrone and

3    KONICA-MINOLTA misappropriated the source code and used it for their own unauthorized

4    purposes, while concealing such facts from Plaintiff.

5        20.    On or about August 31, 2004 defendant KONICA-MINOLTA and ALTAVION

6    executed a Memorandum of Understanding ("MOU"), which, according to its terms, "summarizes

7    the mutual understanding and agreement" between the parties as existed at that time.    The MOU

8    expressly states, *inter alia*, the following:

9        [KONICA-MINOLTA'S] evaluation of Altavion's Digital Stamping technology [shows]
         that the technology meets the requirement of converting paper documents into self-
10        authenticating and trusted images.

11                            ...

12        [KONICA-MINOLTA] will continue to recognize that Altavion's unique implementation
         of digital stamping technology is Altavion's own intellectual property and will continue
13        to protect Altavion's technology as defined under the NDA signed between the two
         companies in 2003.

14
15                            ...

16        [KONICA-MINOLTA] agrees to negotiate a fair license and/or revenue share with
         Altavion and its partners should a product be developed, marketed, and sold which
17        utilizes Altavion's Digital Stamping and is distributed through Konica Minolta sales
         division and/or dealer channels.

18    Mr. Tomita executed the MOU on behalf of defendant KONICA-MINOLTA and Dr. Moussa

19    execute the MOU on ALTAVION'S behalf.

20        21.    In correspondence dated August 31, 2004, Dr. Moussa expressly reiterated the

21    confidential nature of ALTAVION'S proprietary DST information, more of which ALTAVION

22    disclosed directly to Mr. Tomita, Mr. Cattrone and others during a meeting conducted on August 31,

23    2004. Dr. Moussa stated specifically:

24        I would like to thank each of you in person about the successful meeting we had today
         that has been conducted in a cooperating [sic] atmosphere.    I just want to remind
25        everyone of us including myself that the material that I disclosed to you today on behalf
         of Altavion regarding creating image-survivable security stamp[s] on a check at the print
26        time is a very sensitive and confidential material that will need all of the protection that
         one has to use under the NDA signed between Konica-Minolta and Altavion in December
27        2003.    Please take all the necessary steps to ensure the confidentiality of this piece of
         intellectual property for Altavion.    I trust that we all will be careful in disclosing any of
28        the information which Altavion disclosed to Konica-Minolta regarding its technology for
         Digital Stamping pre-use of [c]hecks and post-use of checks.

9

22.    Abruptly and without notice of any kind, in or about October 2004 – less than two months after signing the MOU – defendant KONICA-MINOLTA completely discontinued all communication or contact with ALTAVION and Dr. Moussa without providing any articulated reason for terminating communications.

23.    Unbeknownst to Dr. Moussa or ALTAVION, only 6 months after signing the NDA and approximately two months before signing the MOU, defendant KONICA-MINOLTA caused to be filed the first in a series of United States Patent Applications, which disclose ALTAVION'S proprietary DST intellectual property and identify various KONICA-MINOLTA employees as named inventors, including Wei Ming and Hiroshi Tomita.  Following is a list of currently pending KONICA-MINOLTA Patent Applications containing various components of ALTAVION'S DST intellectual property, which KONICA-MINOLTA caused to be filed without ALTAVION'S knowledge or consent.  The first listed Patent Application was filed within approximately 1 month of KONICA-MINOLTA receiving the formal DST evaluation software in April and May of 2004.  All of the Applications listed below have been filed within the effective period of the NDA.

| Date Filed | Named Inventor(s) | U.S. Patent Application No. | Invention Title |
|---|---|---|---|
| June 28, 2004 | Wei Ming | US 2005/0284944 | Color Barcode Producing, Reading And/Or Reproducing Method And Apparatus |
| August 9, 2004 | Wei Ming Hiroshi Tomita | US 2006/0027660 | Color Barcode Producing Method And Apparatus, Color Barcode Reading Method And Apparatus And Color Barcode Reproducing Method And Apparatus |
| March 28, 2005 | Hiroshi Tomita | US 2006/0213993 | Systems And Methods For Preserving And Maintaining Document Integrity |
| March 28, 2005 | Hiroshi Tomita | US 2006/0213965 | Systems And Method For Preserving And Maintaining Document Integrity |
| January 31, 2006 | Paul Cattrone Hiroshi Tomita Vivek Pathak | US 2007/0177824 | Document Management Method Using Barcode To Store Access History Information |
| January 31, 2006 | Paul Cattrone Hiroshi Tomita Vivek Pathak | US 2007/0176001 | Document Printing And Scanning Method Using Low Resolution Barcode To Encode Resolution Data |

| January 31, 2006 | Paul Cattrone Hiroshi Tomita Vivek Pathak | US 2007/0176000 | Selective Image Encoding And Replacement |
|---|---|---|---|
| February 28, 2006 | Paul Cattrone Hiroshi Tomita Vivek Pathak | US 2007/0199994 | Color Barcode With Enhanced Capacity And Readability For A Closed Loop System |
| February 28, 2006 | Paul Cattrone Hiroshi Tomita Vivek Pathak | US 2007/0201106 | Optimum Noise Filter Setting For A Scanner In A Closed Loop System |
| February 28, 2006 | Paul Cattrone Hiroshi Tomita Vivek Pathak | US 2007/0204164 | Method And Apparatus For Authenticating Printed Documents |

The available Information Disclosure Statements filed in conjunction with the above-referenced KONICA-MINOLTA Patent Applications do not disclose any mention of Dr. Moussa, ALTAVION, or its DST intellectual property as cited prior art references for consideration by the United States Patent and Trademark Office.

24.    Defendant KONICA-MINOLTA neither informed nor otherwise notified Dr. Moussa or ALTAVION of the above-referenced Patent Application filings.  At no point or time during negotiations with Dr. Moussa or ALTAVION did Hiroshi Tomita, Paul Cattrone, Wei Ming or any other KONICA-MINOLTA representative disclose the fact that the above-referenced Patent Applications had been filed and contain ALTAVION'S proprietary DST intellectual property. Rather, Dr. Moussa first discovered this misappropriation of ALTAVION'S proprietary and trade secret DST intellectual property while surfing the Internet in or about October 2006.

### FIRST CAUSE OF ACTION

**(Misappropriation Of Trade Secrets (Civil Code §3426.1(b)) Against All Defendants)**

25.    Plaintiff ALTAVION incorporates by reference the allegations stated in Paragraphs 1 through 24, inclusive, as if fully set forth.

26.    ALTAVION has established its technical knowledge and creative leadership in the document security industry based in large part on its efforts and success of developing a set of proprietary digital stamping technology.    ALTAVION'S efforts in this regard include a comprehensive, extensive and continuing commitment to develop unique, proprietary technology and processes for its DST suite of applications and corresponding document security solutions.

11

1   ALTAVION developed the confidential DST intellectual property at substantial expense over a

2   prolonged time period. Availability of this confidential information to a competitor would provide a

3   significant advantage to such competition and cause a significant loss to ALTAVION. The

4   confidential information is not generally known to the public or the industry and has been the subject

5   of reasonable efforts to maintain its confidentiality, including requiring the execution of a

6   Confidentiality And Mutual Non-Disclosure Agreement for potential clients, restricting access to the

7   confidential information to ALTAVION'S employees, consultants and suppliers who must use the

8   confidential information in performing their agreements with ALTAVION and by restricting access

9   to the places where confidential DST information is used.

10          27.    ALTAVION is informed and believes and based thereon alleges that while acting as a

11   potential client of ALTAVION, and following potential client negotiations commencing in or about

12   the Fall of 2002, defendants misappropriated substantial portions of ALTAVION'S confidential DST

13   intellectual property by obtaining such confidential information from Dr. Moussa and ALTAVION

14   during discussions, negotiations, meetings and other communications between ALTAVION and

15   KONICA-MINOLTA regarding, *inter alia*, ALTAVION'S proprietary DST solutions.

16          28.    ALTAVION is informed and believes and based thereon alleges that defendants have

17   incorporated portions of ALTAVION'S confidential DST intellectual property into multiple United

18   States Patent Applications filed on behalf of defendant KONICA-MINOLTA, and intends to use or

19   has already used ALTAVION'S confidential information to develop a digital stamping system that

20   directly competes with the DST system developed and offered for sale by ALTAVION, giving

21   KONICA-MINOLTA an economic advantage that it would not otherwise have had without

22   knowledge of ALTAVION'S confidential information.

23          29.    The acts of defendants as alleged constitute misappropriation of trade secrets as

24   defined in Civil Code Section 3426.1(b).

25          30.    As a proximate result of defendants' acts of misappropriation and use of

26   ALTAVION'S trade secrets, ALTAVION has lost profits at a rate of approximately $4,500,000

27   (Four Million Five Hundred Thousand Dollars) per month since the Fall of 2003 and will continue to

28   / / /

1  lose profits until defendant KONICA-MINOLTA is enjoined from using ALTAVION'S trade

2  secrets.

3         31.    As an additional proximate result of defendants' misappropriation and unauthorized

4  use of ALTAVION'S trade secrets, ALTAVION is informed and believes and based thereon alleges

5  that defendants have been unjustly enriched.  ALTAVION is uncertain regarding the amount of

6  unjust enrichment and will amend this Complaint to allege the amount when it becomes certain.

7         32.    Alternatively, ALTAVION is entitled to a reasonable royalty pursuant to Civil Code

8  § 3426.3(b).  A reasonable royalty for defendants' use of ALTAVION'S DST trade secrets is 50% of

9  their sales of all products containing ALTAVION'S DST solutions.

10        33.    As an additional proximate result of defendants' misappropriation, ALTAVION has

11 sustained and, unless this Court intervenes to restrain defendants' conduct, will continue to sustain

12 substantial and irreparable injury in that ALTAVION will lose customers and accounts, causing

13 injury to ALTAVION'S shareholders, employees and prospective licenses, preventing ALTAVION

14 from developing new business opportunities and potentially putting ALTAVION out of business

15 permanently.  ALTAVION has no adequate remedy at law for these injuries.  Unless defendants are

16 restrained from using ALTAVION'S trade secrets and confidential information in the future,

17 ALTAVION will be compelled to file a multiplicity of suits to protect its interests.

18        34.    ALTAVION is informed and believes and based thereon alleges that defendants

19 willfully and maliciously committed their acts of misappropriation, in that defendants intended by

20 their conduct to obviate the need of using ALTAVION'S DST suite of products by misappropriating

21 ALTAVION'S DST trade secrets and surreptitiously incorporating those trade secrets into

22 defendants' currently pending U.S. Patent Applications and products.  The fact that defendants

23 prepared and filed U.S. Patent Applications incorporating ALTAVION'S proprietary DST solutions

24 during the very same time period in which defendants purported to evaluate DST for prospective

25 licensing or revenue sharing with ALTAVION is indicative of defendants' willful and malicious

26 misappropriation.  Defendants' conduct justifies an award to ALTAVION of exemplary damages

27 pursuant to Civil Code §3426.3(c) and of attorney's fees pursuant to Civil Code §3426.4.

28 ///

## SECOND CAUSE OF ACTION

### (Conversion Against All Defendants)

35.    ALTAVION incorporates by reference the allegations stated in Paragraphs 1 through 34, inclusive, as if fully set forth.

36.    In or about the Fall of 2002 ALTAVION was in possession of the knowledge and technology required to accomplish a document security system employing DST as well as corresponding DST products.  This knowledge and technology comprised various tangible media, including but not limited to DST software discs, encoded software source code both imbedded in the DST software and revealed in writing, written hardware and software interface explanations, formal and draft engineering designs and drawings and written system implementation protocols.

37.    In or about the Fall of 2002 the knowledge and technology necessary for accomplishing a document security system employing DST and related DST products had a reasonable market value of $270,000,000 (Two Hundred Seventy Million Dollars) plus additional revenues associated with further implementation.

38.    ALTAVION is informed and believes and based thereon alleges that sometime after the Fall of 2002, and particularly in or about January or February of 2004 and again in April and May of 2004, defendants came into the possession of and used tangible media comprising ALTAVION'S confidential, proprietary knowledge and technology, including but not limited to DST software discs, encoded software source code both imbedded in the DST software and revealed in writing, written hardware and software interface explanations, formal and draft engineering designs and drawings and written system implementation protocols, and converted this confidential and technological information for defendants' own use for the improper purpose of subsequently developing products incorporating ALTAVION'S DST technology.  Defendants' currently pending U.S. Patent Applications referenced above in paragraph 23 disclose digital stamping technology that is substantially similar or literally identical to ALTAVION'S DST intellectual property, in that the disclosed digital stamp creation and stamping techniques, authentication and integrity assessment features are achieved in the same way as DST functionality is achieved, and the Patent Applications

/ / /

14

1  include KONICA-MINOLTA employees Hiroshi Tomita and Wei Ming, both of whom requested

2  (on multiple occasions) and received detailed and extensive DST information from Dr. Moussa and

3  ALTAVION for KONICA-MINOLTA'S purported evaluation of the DST system and corresponding

4  components. As listed above in Paragraph 23, at least 10 currently pending U.S. Patent Applications

5  were filed on KONICA-MINOLTA'S behalf and contain ALTAVION'S DST intellectual property.

6  Each of the currently pending Applications was filed within the time frame during which the NDA

7  remained in full force and effect from its execution in December 2003.

8      47.    ALTAVION fully performed the NDA and provided detailed technical information to

9  defendant KONICA-MINOLTA in order for KONICA-MINOLTA to, *inter alia*, purportedly

10 evaluate ALTAVION'S technology for future license purchase or revenue sharing and incorporation

11 into KONICA-MINOLTA'S products.

12     48.    Defendant KONICA-MINOLTA breached the NDA when it used its subject matter for

13 its own unauthorized purposes to prepare and file currently pending U.S. Patent Applications

14 containing ALTAVION'S DST intellectual property without ALTAVION'S knowledge, consent or

15 authorization.

16     49.    ALTAVION sustained damages as a proximate result of KONICA-MINOLTA'S

17 breach. Specifically in this regard, ALTAVION has lost cumulative DST licensing revenue in the

18 amount of approximately $270,000,000 (Two Hundred Seventy Million Dollars). In addition,

19 ALTAVION has sustained substantial and cognizable lost business opportunities as a direct result of

20 KONICA-MINOLTA'S conduct, in that KONICA-MINOLTA'S Patent Application filings, as

21 indicated above in Paragraph 23, have created uncertainty as to ALTAVION'S ownership of its DST

22 intellectual property, which has impeded ALTAVION'S ability to forge new business relationships

23 involving its DST suite of technology.

### FOURTH CAUSE OF ACTION

**(Unjust Enrichment Against All Defendants)**

26     50.    ALTAVION incorporates by reference the allegations stated in Paragraphs 1 through

27 49, inclusively, as if fully set forth.

28 ///

17

1    51.    Defendants wrongfully received information regarding the scientific and technical

2    knowledge of ALTAVION'S DST systems and solutions under the false representation that

3    defendants were, *inter alia*, evaluating ALTAVION'S DST information for the purpose of

4    purchasing DST products for incorporation into KONICA-MINOLTA'S products.

5    52.    ALTAVION is informed and believes and based thereon alleges that defendants used

6    information regarding ALTAVION'S scientific and technical knowledge of its DST systems and

7    solutions for KONICA-MINOLTA'S own financial and competitive benefit.

8    53.    ALTAVION has never been reimbursed for the value of the scientific and technical

9    knowledge regarding its DST systems and solutions provided to KONICA-MINOLTA and disclosed

10   by KONICA-MINOLTA in at least 10 currently pending U.S. Patent Applications filed on

11   KONICA-MINOLTA'S behalf without ALTAVION'S knowledge, consent or authorization.

12   KONICA-MINOLTA was unjustly enriched by receiving ALTAVION'S DST intellectual property

13   and using it to prepare and file U.S. Patent Applications disclosing DST technology to be

14   incorporated into KONICA-MINOLTA products without providing any consideration or value in

15   return for the proprietary information.

16   **FIFTH CAUSE OF ACTION**

17   **(Unfair Business Practices [Bus. & Prof. Code §§ 17200 et seq.] Against All Defendants)**

18   54.    ALTAVION incorporates by reference the allegations stated in Paragraphs 1 through

19   53, inclusively, as if fully set forth.

20   55.    ALTAVION is informed and believes and based thereon alleges that defendants have

21   engaged in unfair competition as defined by California Business and Professions Code Sections

22   17200, et seq. in that defendants have used unfair, unlawful and fraudulent business practices,

23   including false representations, concealment, improper solicitations, and violations of state and

24   federal law in the manner or manners alleged herein.

25   56.    ALTAVION is informed and believes and based thereon alleges that in addition to

26   the practices described above in Paragraphs 18 through 24, such practices include without limitation

27   the use of fraud and concealment to misappropriate ALTAVION'S proprietary DST intellectual

28   property for defendants' use and benefit, including incorporation into multiple U.S. Patent

18

1  Applications filed on KONICA-MINOLTA'S behalf without ALTAVION'S consent or

2  authorization.

3      57.    ALTAVION is informed and believes and based thereon alleges that in doing the acts

4  alleged above, defendants acted with the intent to obtain property or money from ALTAVION and

5  others by means of conduct that was unfair, fraudulent, illegal, or otherwise proscribed by Business

6  and Professions Code Sections 17200, et seq.

7      58.    As a direct and proximate result of defendants' actions, ALTAVION is entitled to

8  recover restitution and disgorgement of all money and property provided to defendants by virtue of

9  their various acts of unfair competition and violations of Business and Professions Code Sections

10  17200, et seq.

11      59.    ALTAVION is further entitled to injunctive relief against defendants to ensure that

12  they do not, directly or indirectly, commit further acts of unfair competition.

13                          **SIXTH CAUSE OF ACTION**

14              **(Fraud (Misprepresentation) Against All Defendants)**

15      60.    ALTAVION incorporates by reference the allegations stated in Paragraphs 1 through

16  53, inclusive, as if fully set forth.

17      61.    ALTAVION is informed and believes and based thereon alleges that defendants

18  falsely represented their intentions with respect to obtaining and using the scientific and technical

19  information ALTAVION provided regarding its DST systems and solutions commencing in or about

20  the Fall of 2002.  Specifically in this regard, from the inception and throughout the course of

21  numerous meetings and communications between defendant KONICA-MINOLTA, Dr. Moussa and

22  ALTAVION, KONICA-MINOLTA expressly stated its substantial interest in incorporating DST

23  solutions and systems into KONICA-MINOLTA products and working in conjunction with

24  ALTAVION in order to achieve this objective.  Significantly forthcoming in this regard was Mr.

25  Tomita who, in correspondence dated December 15, 2003, expressly stated:

26      [I]t gives me pleasure to express our deep interests in your company, its technologies and
        system solutions.  At Konica-Minolta we are studying using your unique technology for
27      digital stamping for possible use in multiple applications in current and future products
        and for jointly developing it further for even better utilization.
28

COMPLAINT

Based in large part on this premise – the prospect of licensing future DST applications within KONICA-MINOLTA products – ALTAVION executed a NDA with KONICA-MINOLTA and divulged, in profuse detail, its proprietary and confidential DST intellectual property believing that the information would remain confidential pursuant to the NDA.  In the Winter of 2003 and Spring of 2004, ALTAVION provided defendants with at least 3 complete evaluation copies of its proprietary DST software and correspondingly disclosed substantial proprietary DST information in order for defendants to purportedly continue the evaluation process.  ALTAVION is informed and believes and based thereon alleges that defendants intended to misappropriate ALTAVION'S DST intellectual property instead of evaluate it for license purchase.

62.     ALTAVION is informed and believes and based thereon alleges that defendant KONICA-MINOLTA misrepresented to the United States Patent and Trademark Office ("USPTO") the true inventors corresponding to U.S. Patent Application Nos. US 2005/0284944, US 2006/0027660, US 2006/0213993, US 2006/0213965, US 2007/0177824, US 2007/0176001, US 2007/0176000, US 2007/0199994, US 2007/0201106, and US 2007/0204164.  Specifically in this regard, as each of the pending Patent Applications contain ALTAVION'S proprietary DST intellectual property, Dr. Moussa is a significant and true inventor of the disclosed technology and should be named as an inventor on each Application.  ALTAVION is informed and believes and based thereon alleges that the omission of Dr. Moussa as an inventor on each of the identified Patent Applications has caused financial damage to ALTAVION, as hereinafter alleged.

63.     ALTAVION is informed and believes and based thereon alleges that defendants had knowledge of the falsity of their misrepresentations with respect to the intended use of ALTAVION'S DST intellectual property and with respect to the omission of Dr. Moussa as a named inventor on the pending Patent Applications referenced above, which include ALTAVION'S DST intellectual property and were filed on defendant KONICA-MINOLTA'S behalf.  Specifically in this regard, during the course of negotiations with ALTAVION and as ALTAVION was continually providing KONICA-MINOLTA detailed DST information for evaluation purposes, defendant KONICA-MINOLTA was in the process of preparing and filing various Patent Applications, which contain the proprietary DST information provided by ALTAVION and omit Dr. Moussa as a named

1   inventor. Thus, KONICA-MINOLTA knowingly and falsely represented that ALTAVION'S DST

2   information was being evaluated for future license purchase or revenue sharing and incorporation

3   into KONICA-MINOLTA products. KONICA-MINOLTA knowingly and falsely omitted Dr.

4   Moussa as a named inventor, and failed to cite the DST intellectual property as prior art, in

5   conjunction with its pending Patent Applications referenced above in Paragraph 23.

6         64.    Neither Dr. Moussa nor ALTAVION were aware that KONICA-MINOLTA was

7   preparing and filing patent applications concurrently with requesting and obtaining ALTAVION'S

8   DST intellectual property. For example, Patent Application No. US 2005/0284944 (Color Barcode

9   Producing, Reading And/Or Reproducing Method And Apparatus), naming KONICA-MINOLTA

10  employee Wei Ming as the sole inventor, was filed June 28, 2004 – approximately 2 months after

11  ALTAVION provided KONICA-MINOLTA with the formal DST evaluation software, which

12  contained information disclosed in Patent Application No. US 2005/0284944. Less than two months

13  later, Patent Application No. US 2006/0027660 (Color Barcode Producing Method And Apparatus,

14  Color Barcode Reading Method And Apparatus And Color Barcode Reproducing Method And

15  Apparatus), was filed on August 9, 2004 naming KONICA-MINOLTA employees Wei Ming and

16  Hiroshi Tomita as inventors. This Application was filed less than three weeks before Mr. Tomita

17  and Dr. Moussa executed the August 31, 2004 MOU, which states in significant part that KONICA-

18  MINOLTA "will continue to recognize that Altavion's unique implementation of digital stamping

19  technology is Altavion's own intellectual property and will continue to protect Altavion's technology

20  as defined under the NDA signed between the two companies in 2003." In direct contravention to

21  the NDA and MOU, KONICA-MINOLTA was surreptitiously preparing and filing patent

22  applications containing ALTAVION'S DST intellectual property and omitting Dr. Moussa as a

23  named inventor as KONICA-MINOLTA requested and received ALTAVION'S DST intellectual

24  property.

25        65.    ALTAVION is informed and believes and based thereon alleges that defendants

26  intended to induce ALTAVION'S reliance on their misrepresentations with respect to their intended

27  use of the DST intellectual property. Specifically in this regard, during the course of negotiations

28  commencing in the Fall of 2002 through the Fall 2004, KONICA-MINOLTA assured Dr. Moussa

21

1   and ALTAVION that KONICA-MINOLTA was evaluating the DST technology for future license

2   purchase or revenue sharing and incorporation into KONICA-MINOLTA products. For the purpose

3   of continuing negotiations regarding the stated future use of DST solutions within KONICA-

4   MINOLTA products, ALTAVION and KONICA-MINOLTA executed the NDA in December 2003

5   and approximately 1 month later ALTAVION provided KONICA-MINOLTA with a set of initial

6   DST evaluation software for examination. Within the following 3 months ALTAVION provided

7   KONICA-MINOLTA with formal DST evaluation software and subsequently with a copy of special

8   DST evaluation software to evaluate filter addition applications.    Throughout this period

9   ALTAVION provided KONICA-MINOLTA with other and substantial detailed DST information

10  upon KONICA-MINOLTA'S request. After completing its DST software evaluation and reporting

11  positively regarding DST's performance in the Altavion Digital Stamping Software Evaluation and

12  subsequent documentation, ALTAVION and defendant KONICA-MINOLTA executed the August

13  31, 2004 MOU, which further expresses KONICA-MINOLTA'S stated intent of negotiating the

14  purchase of a license or revenue sharing scheme to incorporate DST into KONICA-MINOLTA

15  products.    KONICA-MINOLTA'S actions in this regard induced ALTAVION'S reliance on

16  KONICA-MINOLTA'S false representations.

17      66.    ALTAVION provided defendants with the DST evaluation software and related

18  proprietary technical information in reasonable reliance on their representations that a license

19  agreement or revenue sharing scheme would be forthcoming for KONICA-MINOLTA'S use of the

20  DST intellectual property.

21      67.    ALTAVION sustained damages as a proximate result of KONICA-MINOLTA'S

22  fraudulent conduct.  Specifically in this regard, ALTAVION has lost cumulative revenue with

23  respect to licensing or revenue sharing income in the amount of approximately $270,000,000 (Two

24  Hundred Seventy Million Dollars).  In addition, ALTAVION has sustained substantial and

25  cognizable lost business opportunities as a direct result of KONICA-MINOLTA'S fraudulent

26  conduct, in that KONICA-MINOLTA'S Patent Application filings, as indicated above in Paragraph

27  23, have created uncertainty as to ALTAVION'S ownership of its DST intellectual property, which

28  / / /

has impeded ALTAVION'S ability to forge new business relationships involving its DST suite of technology.

### SEVENTH CAUSE OF ACTION

#### (Fraud (Concealment) Against All Defendants)

68.    ALTAVION incorporates by reference the allegations stated in Paragraphs 1 through 59, inclusive, as if fully set forth.

69.    By concealing from ALTAVION the fact that KONICA-MINOLTA incorporated ALTAVION'S DST trade secrets and related intellectual property into multiple U.S. Patent Applications, all of which have been published and are available to the general public, defendants defrauded ALTAVION and have subjected ALTAVION'S DST trade secrets to public disclosure in direct contravention to the NDA and defendants' related confidentiality obligations. Additionally, had ALTAVION known the facts concealed by defendants, it would not have disclosed its DST trade secrets to them.

70.    ALTAVION has been damaged by said conduct because it has lost revenue, including without limitation lost licensing revenue, as a result of KONICA-MINOLTA'S failure to complete licensing negotiations with ALTAVION as articulated in the MOU and various other correspondence indicating KONICA-MINOLTA'S intent to license ALTAVION'S DST intellectual property. Additionally, defendants' misappropriation of ALTAVION'S DST intellectual property, including the publication of ALTAVION'S DST trade secrets, has become a substantial impediment to ALTAVION'S business development efforts and ability to establish new business relationships in the industry, which has likewise resulted in cognizable lost revenue to ALTAVION.

71.    In addition to the foregoing acts of concealment, defendants concealed from ALTAVION the fact that KONICA-MINOLTA commenced incorporating ALTAVION'S DST intellectual property into U.S. Patent Applications filed on KONICA-MINOLTA'S behalf during the same time period in which defendants requested detailed DST information for the purported objective of evaluating DST for licensing and incorporation into various KONICA-MINOLTA products.

/ / /

COMPLAINT

72.    ALTAVION has been damaged by these acts of fraud/concealment in the sum of $270,000,000 (Two Hundred Seventy Million Dollars) plus additional other sums according to proof.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff ALTAVION respectfully prays for the follows:

1.    Orders temporarily, preliminarily and permanently:

(A)    Restraining defendant KONICA-MINOLTA from seeking to exploit any rights, either directly or through third parties, with respect to the following U.S. Patent Applications and any related applications or subsequently issued patents:

(1)    US 2005/0284944;

(2)    US 2006/0027660;

(3)    US 2006/0213993;

(4)    US 2006/0213965;

(5)    US 2007/0177824;

(86    US 2007/0176001;

(7)    US 2007/0176000;

(8)    US 2007/0199994;

(9)    US 2007/0201106;

(10)    US 2007/0204164;

(B)    Enjoining defendants from using or disclosing to others any confidential or otherwise proprietary information derived from ALTAVION'S DST intellectual property, including ALTAVION'S DST intellectual property that was disclosed within and in conjunction with the evaluation software delivered to defendant KONICA-MINOLTA in the Winter and Spring of 2004;

(C)    Ordering defendant KONICA-MINOLTA to recognize ALTAVION'S ownership of all patent applications, including those listed above, comprising ALTAVION'S DST intellectual property;

///

///

24

COMPLAINT

(D)    Ordering defendants to return to ALTAVION all confidential or otherwise proprietary DST intellectual property together with all other property in their possession or under their control that contains or refers to ALTAVION'S DST intellectual property; and

(E)    Enjoining defendants from altering, destroying, or otherwise disposing of any records or physical evidence relating to (i) ALTAVION, (ii) ALTAVION'S confidential or otherwise proprietary DST intellectual property, or (iii) defendants' actions as alleged above.

2.    Compensatory damages for lost cumulative revenue with respect to the KONICA-MINOLTA DST license or revenue sharing scheme and lost revenue from lost business opportunities in the amount of $270,000,000 (Two Hundred Seventy Million Dollars) per unit.

3.    Compensatory damages for lost cumulative revenue with respect to the KONICA-MINOLTA license or revenue sharing scheme in the sum of $4,500,000, (Four Million Five Hundred Thousand Dollars) per month for so long as the misappropriation continues, together with interest as permitted by law;

4.    An order for an accounting of any profits improperly made by defendants, and imposing a constructive trust on the profits in plaintiff ALTAVION'S favor;

5.    If the court can neither enjoin defendant KONICA-MINOLTA'S use of plaintiff ALTAVION'S trade secrets nor impose damages on KONICA-MINOLTA, then an order requiring KONICA-MINOLTA to pay ALTAVION a royalty of 50% on the amount received for each sale of products comprising ALTAVION'S DST intellectual property for the period the court deems proper;

6.    Prejudgment interest as allowed by law;

7.    Damages for the time and money properly expended in pursuit of the converted property;

8.    Exemplary damages in an amount sufficient to punish and deter defendants' conduct;

9.    Costs of suit, including attorneys' fees as allowed by the Uniform Trade Secrets Act and other provisions of law shown to be applicable, including without limitation Code of Civil Procedure section 1021.5; and

/ / /

/ / /

1    10.    Such further relief as the court deems proper.

2    DATED:  November 8, 2007                **COSTELLO LAW CORPORATION**
3                                             John P. Costello, Esq.
                                              Pamela W. Bertani, Esq.
4
                                                         -and-
5
                                             **MILLSTONE, PETERSON & WATTS, LLP**
6                                            *Attorneys at Law*
7

8                                            By:_____/s/ GLENN W. PETERSON_____
9                                                      GLENN W. PETERSON

10                                           *Attorneys for Plaintiff Altavion, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**EXHIBIT  B**

1  BRYAN J. WILSON (BAR NO. 138842)
   Email: BWilson@mofo.com
2  MARC J. PERNICK (BAR NO. 160591)
   Email: MPernick@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
5  Facsimile: (650) 494-0792

**FILED**
SAN MATEO COUNTY

DEC 1 1 2007

Clerk of the Superior Court

By
DEPUTY CLERK

6  Attorneys for Defendants
   KONICA-MINOLTA SYSTEMS LABORATORY, INC., and
7  PAUL CATTRONE

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       COUNTY OF SAN MATEO

11

12  ALTAVION, INC., a California corporation,,          Case No.   CIV 467662

13              Plaintiff,
                                                        UNLIMITED JURISDICTION
14      v.
                                                        **MOTION AND MEMORANDUM
15  KONICA-MINOLTA SYSTEMS                              OF POINTS AND AUTHORITIES
    LABORATORY, INC., a corporation; PAUL              IN SUPPORT OF DEFENDANTS'
16  CATTRONE, an individual; and DOES 1 through        MOTION FOR ORDER
    50, inclusive,,                                     EXTENDING TIME TO RESPOND
17                                                      TO COMPLAINT
                Defendants.
18                                                      Date:   December 11, 2007
                                                        Time:   2 p.m.
19                                                      Dept.:  Law & Motion

20

21        Plaintiff filed its Complaint against Defendants on November 9, 2007.  Plaintiff served

22  Konica Minolta on November 14, 2007, and effected service on Paul Cattrone on December 7, 2007.

23  Defendants' initial response to the Complaint is currently due December 14, 2007.  Plaintiff's

24  counsel has agreed to a 30-day extension.  *See* Pernick Decl. at ¶ 4.  Pursuant to Local Rule

25  2.3(d)(5)(C) and for the following reasons, Defendants request an order extending the time for

26  Defendants to respond to the Complaint to January 14, 2008.

27

28

1      Plaintiff's 25-page Complaint includes seven distinct causes of action. Defendants and their

2  counsel are working diligently to assess Plaintiff's claims. However, both the claims and subject

3  matter of this case are complex. The default 30-day time allotted for a response to the Complaint is

4  insufficient to give Defendants adequate time to make an informed response. Pernick Decl. at ¶ 5.

5      Counsel for Plaintiff has stipulated to this requested extension. Accordingly, and for the

6  reasons outlined above, Defendants respectfully request that the Court grant their motion to extend

7

8  the time to respond to the Complaint until January 14, 2008.

9

10  Dated: December ___10___, 2007      BRYAN J. WILSON
                           MARC J. PERNICK

11                              MORRISON & FOERSTER LLP

12

13                     By: _____
                            Marc J. Pernick

14                     Attorneys for Defendants
                           KONICA-MINOLTA SYSTEMS

15                           LABORATORY, INC., and PAUL
                           CATTRONE

16

17

18

19

20

21

22

23

24

25

26

27

28

1  BRYAN J. WILSON (BAR NO. 138842)
   Email: BWilson@mofo.com
2  MARC J. PERNICK (BAR NO. 160591)
   Email: MPernick@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
5  Facsimile: (650) 494-0792

6  Attorneys for Defendants
   KONICA-MINOLTA SYSTEMS LABORATORY, INC., and
7  PAUL CATTRONE

**FILED**
SAN MATEO COUNTY

DEC 1 4 2007

Clerk of the Superior Court

By
      DEPUTY CLERK

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       COUNTY OF SAN MATEO

11

12 ALTAVION, INC., a California corporation,,        Case No.   CIV 467662

13              Plaintiff,
                                                     UNLIMITED JURISDICTION
14      v.
                                                     **DECLARATION OF MARC J.**
15 KONICA-MINOLTA SYSTEMS                            **PERNICK IN SUPPORT OF**
   LABORATORY, INC., a corporation; PAUL             **DEFENDANTS' MOTION FOR**
16 CATTRONE, an individual; and DOES 1 through       **ORDER EXTENDING TIME TO**
   50, inclusive,,                                   **RESPOND TO COMPLAINT**
17
                Defendants.
18

19

20     I, Marc J. Pernick, declare as follows:

21     1.  I am a member in good standing of the Bar of the State of California, am authorized to

22 practice before this Court and am a partner at the law firm of Morrison & Foerster LLP, counsel of

23 record for Defendants' Konica-Minolta Systems Laboratory, Inc. and Paul Cattrone ("Defendants").

24 I make this declaration of my own personal knowledge, and if called as a witness I could and would

25 testify competently thereto.

26

27

28

2. The Complaint in this matter was filed on November 9, 2007 and served on Konica-Minolta on November 14, 2007. Service was effected on Paul Cattrone on December 7, 2007, based on our agreement to accept service on Mr. Cattrone's behalf.

3. On December 4, 2007, I spoke by telephone with Glenn Peterson, counsel for Plaintiff Altavion, Inc. I asked Mr. Peterson if he would agree on behalf of his client to allow Defendants thirty (30) additional days to respond to the Complaint. Mr. Peterson told me he would consider the matter.

4. On December 6, 2007, I received a voicemail from Mr. Peterson in which he agreed that Defendants' deadline to respond to the Complaint could be continued for up to thirty (30) days.

5. Plaintiff's complaint includes seven distinct causes of action. Both the claims and the underlying facts are complex. Accordingly, Defendants need additional time to analyze the Complaint.

6. Defendants, both of whom are represented by Morrison & Foerster, plan to submit a unified response to the complaint. Extension of the time to respond will facilitate this effort and will thereby ease the burden on the Court.

7. On December 10, 2007 at 9:00 a.m., my colleague Laura Mason left a voicemail for Mr. Peterson notifying him of our intent to file an *ex parte* application on December 11, 2007. Mr. Peterson agreed to accept service by facsimile and formal notice of the *ex parte* application was sent to him by that means at 10:10 a.m.

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 10th day of December, 2007 at Palo Alto, California.

Marc. J. Pernick

1   BRYAN J. WILSON (BAR NO. 138842)
    Email: BWilson@mofo.com
2   MARC J. PERNICK (BAR NO. 160591)
    Email: MPernick@mofo.com
3   MORRISON & FOERSTER LLP
    755 Page Mill Road
4   Palo Alto, California 94304-1018
    Telephone: (650) 813-5600
5   Facsimile:  (650) 494-0792

6   Attorneys for Defendants
    KONICA-MINOLTA SYSTEMS LABORATORY, INC., and
7   PAUL CATTRONE

8

**FILED**
SAN MATEO COUNTY

DEC 1 1 2007

Clerk of the Superior Court
by
DEPUTY CLERK

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                         COUNTY OF SAN MATEO

11

12   ALTAVION, INC., a California corporation,,        Case No.    CIV 467662

13              Plaintiff,

14        v.                                           UNLIMITED JURISDICTION

15   KONICA-MINOLTA SYSTEMS                            [PROPOSED] ORDER GRANTING
     LABORATORY, INC., a corporation; PAUL            DEFENDANTS' UNOPPOSED
16   CATTRONE, an individual; and DOES 1 through      MOTION FOR ORDER
     50, inclusive,,                                   EXTENDING TIME TO RESPOND
17                                                     TO COMPLAINT
                Defendants.
18

19

20        This matter having come before the Court on the Defendants' unopposed motion for an order

21   extending the time to respond to Plaintiff's complaint, the Court having considered the papers filed in

22   support of the application, there being no opposition thereto, and good cause appearing therefore,

23        Defendants' motion is hereby GRANTED.

24        IT IS HEREBY ORDERED that all Defendants shall have until January 14, 2008, to respond

25   to the Complaint in the above captioned action.

26

27   Dated: December  11 , 2007
                                                    San Mateo County Superior Court Judge

28

pa-1213494                              1

1  BRYAN J. WILSON (BAR NO. 138842)
   Email: BWilson@mofo.com
2  MARC J. PERNICK (BAR NO. 160591)
   Email: MPernick@mofo.com
3  LAURA MASON (BAR NO. 252251)
   Email: LMason@mofo.com
4  MORRISON & FOERSTER LLP
   755 Page Mill Road
5  Palo Alto, California  94304-1018
   Telephone:  (650) 813-5600
6  Facsimile:   (650) 494-0792

7  Attorneys for Defendants
   KONICA-MINOLTA SYSTEMS LABORATORY, INC., and
8  PAUL CATTRONE

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF SAN MATEO

12

13  ALTAVION, INC., a California corporation,,        Case No.    CIV 467662

14                  Plaintiff,

15          v.                                        UNLIMITED JURISDICTION

16  KONICA-MINOLTA SYSTEMS                            **NOTICE OF ENTRY OF ORDER
    LABORATORY, INC., a corporation; PAUL            GRANTING DEFENDANTS'
17  CATTRONE, an individual; and DOES 1 through      UNOPPOSED MOTION FOR
    50, inclusive,,                                   ORDER EXTENDING TIME TO
18                                                    RESPOND TO COMPLAINT**
                    Defendants.
19

20

21          TO PLAINTIFF ALTAVION, INC. AND ITS ATTORNEYS OF RECORD:

22          NOTICE IS HEREBY GIVEN that on December 11, 2007, the Superior Court of California,

23  County of San Mateo, duly entered an Order granting Defendants' Unopposed Motion for Order

24  Extending Time to Respond to Complaint, as set forth in the Order attached hereto as Exhibit A and

25  incorporated herein by reference.

26

27

28

1    Dated: December 13, 2007

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARC J. PERNICK
LAURA MASON
MORRISON & FOERSTER LLP

By:    _____
       Laura Mason

       Attorneys for Defendants
       KONICA-MINOLTA SYSTEMS
       LABORATORY, INC., and PAUL
       CATTRONE

# EXHIBIT A

1  BRYAN J. WILSON (BAR NO. 138842)
   Email: BWilson@mofo.com
2  MARC J. PERNICK (BAR NO. 160591)
   Email: MPernick@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
5  Facsimile:  (650) 494-0792

6  Attorneys for Defendants
   KONICA-MINOLTA SYSTEMS LABORATORY, INC., and
7  PAUL CATTRONE

**FILED**
SAN MATEO COUNTY

DEC 1 1 2007

Clerk of the Superior Court

By _____
       DEPUTY CLERK

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF SAN MATEO

11

12  ALTAVION, INC., a California corporation,,        Case No.    CIV 467662

13              Plaintiff,

14       v.                                           UNLIMITED JURISDICTION

15  KONICA-MINOLTA SYSTEMS                            [PROPOSED] ORDER GRANTING
    LABORATORY, INC., a corporation; PAUL            DEFENDANTS' UNOPPOSED
16  CATTRONE, an individual; and DOES 1 through       MOTION FOR ORDER
    50, inclusive,,                                   EXTENDING TIME TO RESPOND
17                                                    TO COMPLAINT
                Defendants.
18

19

20       This matter having come before the Court on the Defendants' unopposed motion for an order

21  extending the time to respond to Plaintiff's complaint, the Court having considered the papers filed in

22  support of the application, there being no opposition thereto, and good cause appearing therefore,

23       Defendants' motion is hereby GRANTED.

24       IT IS HEREBY ORDERED that all Defendants shall have until January 14, 2008, to respond

25  to the Complaint in the above captioned action.

26

27  Dated: December  11 , 2007        _____
                                      San Mateo County Superior Court Judge
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 755 Page Mill Road, Palo Alto, California  94304-1018.  I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on December 13, 2007, I served a copy of:

**NOTICE OF ENTRY OF ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR ORDER EXTENDING TIME TO RESPOND TO COMPLAINT**

☒ **BY FACSIMILE [Code Civ. Proc sec. 1013(e)]** by sending a true copy from Morrison & Foerster LLP's facsimile transmission telephone number 650.494.0792 to the fax number(s) set forth below, or as stated on the attached service list.  The transmission was reported as complete and without error.  The transmission report was properly issued by the transmitting facsimile machine.

I am readily familiar with Morrison & Foerster LLP's practice for sending facsimile transmissions, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Morrison & Foerster LLP for transmission.

☐ **BY U.S. MAIL [Code Civ. Proc sec. 1013(a)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, California  94304-1018 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing.

pa-1214837

1

☐ **BY OVERNIGHT DELIVERY [Code Civ. Proc sec. 1013(c)]** by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by FedEx, at 755 Page Mill Road, Palo Alto, California 94304-1018 in accordance with Morrison & Foerster LLP's ordinary business practices.

I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited in a box or other facility regularly maintained by FedEx or delivered to an authorized courier or driver authorized by FedEx to receive documents on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.

☐ **BY PERSONAL SERVICE [Code Civ. Proc sec. 1011]** by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and delivery at the mailroom of Morrison & Foerster LLP, causing personal delivery of the document(s) listed above to the person(s) at the address(es) set forth below.

I am readily familiar with Morrison & Foerster LLP's practice for the collection and processing of documents for hand delivery and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be taken from Morrison & Foerster LLP's mailroom and hand delivered to the document's addressee (or left with an employee or person in charge of the addressee's office) on the same date that it is placed at Morrison & Foerster LLP's mailroom.

☐ **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6]** by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(s) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6.

| | |
|---|---|
| Glenn W. Peterson, Esq.<br>MILLSTONE, PETERSON &<br>WATTS, LLP<br>2267 Lava Ridge Court, Suite 210<br>Roseville, CA 95661<br>Phone: (916) 780-8222<br>Fax: (916) 780-8775 | X  Fax<br>____ U.S. Mail<br>____ Overnight<br>____ Personal |
| John P. Costello, Esq.<br>Pamela W. Bertani, Esq.<br>COSTELLO LAW CORPORATION<br>331 J Street, Suite 200<br>Sacramento, CA 95814<br>Phone: (916) 441-2234<br>Fax: (916) 441-4254 | X  Fax<br>____ U.S. Mail<br>____ Overnight<br>____ Personal |

1         I declare under penalty of perjury under the laws of the State of California that the foregoing

2    is true and correct.

3         Executed at Palo Alto, California, December 13, 2007.

4

5

6

7               Sharon R. Bennett                     (signature)
                    (typed)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE