1  BRYAN WILSON (BAR NO. 138842)
   Email: BWilson@mofo.com
2  MARC J. PERNICK (BAR NO. 160591)
   Email: MPernick@mofo.com
3  LAURA MASON (BAR NO. 252251)
   Email: LMason@mofo.com
4  MORRISON & FOERSTER LLP
   755 Page Mill Road
5  Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
6  Facsimile: (650) 494-0792

7  Attorneys for Defendants
   KONICA-MINOLTA SYSTEMS LABORATORY, INC.,
8  AND PAUL CATTRONE

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12  ALTAVION, INC., a California corporation,          Case No. CV 07-06358 MHP

13                    Plaintiff,                       **DEFENDANTS' MEMORANDUM
                                                       IN OPPOSITION TO MOTION
14            v.                                       TO REMAND**

15  KONICA-MINOLTA SYSTEMS                             Date: February 25, 2008
    LABORATORY, INC., a corporation; PAUL             Time: 2:00 p.m.
16  CATTRONE, an individual; and DOES 1 through        Ctrm: 15
    50, inclusive,                                     Hon. Marilyn Hall Patel
17
                      Defendants.                      [No Trial Date Set]
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

THE COMPLAINT........................................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.    REMOVAL IS PROPER WHERE THE RELIEF PLAINTIFF SEEKS
      NECESSARILY DEPENDS ON RESOLUTION OF A SUBSTANTIAL
      QUESTION OF PATENT LAW ...................................................................... 4

      A.    The Relief Altavion Seeks Depends On Resolution Of A Substantial
            Question Of Patent Law .......................................................................... 6

            1.    The relief Altavion requests in 1(A) of its prayer for relief requires
                  an inventorship determination........................................................ 6

            2.    The relief Altavion requests in 1(C) of its prayer for relief also
                  requires an inventorship determination........................................... 9

      B.    Altavion's Argument That Its Own Claims For Relief Are Not Ripe for
            Purposes Of Determining Jurisdiction Are Incorrect................................. 9

            1.    The complaint seeks to restrain presently existing rights .......................... 10

            2.    Section 256 is not at issue here ................................................ 11

II.   BECAUSE FEDERAL JURISDICTION EXISTS, THIS COURT HAS
      SUPPLEMENTAL JURISDICTION OVER ALL CLAIMS........................................... 12

III.  THE COURT SHOULD NOT AWARD COSTS OR FEES TO ALTAVION .............. 12

      A.    Altavion Relies On A Standard That The Supreme Court Has Rejected.............. 12

      B.    Awarding Costs And Fees Would Be Inappropriate Under Martin..................... 13

1

# TABLE OF AUTHORITIES

2

## CASES

3

*AT&T v. Integrated Network Corp.*,
   972 F.2d 1321 (Fed. Cir. 1992)..................................................................................... 9

4

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
5
   986 F.2d 476 (Fed. Cir. 1993).................................................................................... 5

6

*Air Prods. Chems., Inc. v. Reichhold Chems., Inc.*,
   755 F.2d 1559 (Fed. Cir. 1985)................................................................................... 6

7

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*,
8
   361 F. Supp. 2d 210 (S.D.N.Y. 2005) ..................................................................... 10

9

*Balcorta v. Twentieth Century-Fox Film Corp.*,
   208 F.3d 1102 (9th Cir. 2000)............................................................................ 12, 13

10

*Bd. of Regents v. Nippon Tel. and Tel. Corp.*,
11
   414 F.3d 1358 (Fed. Cir. 2005)................................................................................... 6

12

*Beech Aircraft Corp. v. Edo Corp.*,
   990 F.2d 1237 (Fed. Cir. 1992)............................................................................ 9, 11

13

*Caterpillar Inc. v. Sturman Indus.*,
14
   387 F.3d 1358 (Fed. Cir. 2004)................................................................................... 8

15

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988).............................................................................................. 4, 5

16

*Ethicon, Inc. v. United States Surgical Corp.*,
17
   135 F.3d 1456 (Fed. Cir. 1998)................................................................................... 8

18

*Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*,
   527 U.S. 627 (1999)................................................................................................... 4

19

*Franchise Tax Board of California v. Construction Laborers Vacation Trust*,
20
   463 U.S. 1 (1983)....................................................................................................... 4

21

*GAF Building Materials Corp. v. Elk Corp. of Dallas*,
   90 F.3d 479 (Fed. Cir. 1996)................................................................................... 10

22

*Gardner v. UICI*,
23
   508 F.3d 559 (9th Cir. 2007)................................................................................... 14

24

*Gens v. SEZ Am., Inc.*,
   2007 U.S. Dist. LEXIS 22575 (N.D. Cal. Mar. 19, 2007)...................................... 11

25

*Hamblin v. Coinstar, Inc.*,
26
   2007 U.S. Dist. LEXIS 88705 (E.D. Cal. Nov. 21, 2007) ...................................... 14

27

*Heineken Technical Servs., B.V. v. Darby*,
   103 F. Supp. 2d 476 (D. Mass. 2000) ..................................................................... 10

28

1   *Hofler v. Aetna US Healthcare of California, Inc.,*
2       296 F.3d 764 (9th Cir. 2002) ........................................................................ 12, 13

3   *Hunter Douglas v. Harmonic Design, Inc.,*
        153 F.3d 1318 (Fed. Cir. 1998) .................................................................... 5, 8, 11

4   *Immunocept, LLC v. Fulbright & Jaworski, LLP.,*
5       504 F.3d 1281 (Fed. Cir. 2007) .................................................................... 4, 5, 8

6   *In re Snap-On Tools Corp.,*
        720 F.2d 654, 220 U.S.P.Q. 8 (Fed.Cir.1983) .................................................... 5

7   *Intergraph Corp. v. Intel Corp.,*
        241 F.3d 1353 (Fed. Cir. 2001) ...................................................................... 10
8
    *Kozelek v. Jetset Records,*
9       2006 U.S. Dist. LEXIS 73112 (N.D. Cal. Sept. 25, 2006) .................................. 14

10  *Kuba v. 1-A Agric. Ass'n,*
        387 F.3d 850 (9th Cir. 2004) .......................................................................... 12
11
    *MCV, Inc. v. King-Seeley Thermos Co.,*
12      870 F.2d 1568 (Fed. Cir. 1989) ...................................................................... 11

13  *Martin v. Franklin Capital Corp.,*
        546 U.S. 132 (2005) ...................................................................................... 13
14
    *Rustevader Corp. v. Cowatch,*
15      842 F.Supp. 171 (W.D. Penn. 1993) ................................................................. 7

16  *Schering Corp. v. Roussel-UCLAF SA,*
        104 F.3d 341 (Fed. Cir. 1997) .......................................................................... 7
17
    *Shell Oil Co. v. Schering AG,*
18      1997 U.S. Dist. LEXIS 2236 (D. Del. Feb. 13, 1997) ........................................ 10

19  *Trovan, Ltd. V. Sokymat S.A.,*
        299 F.3d 1292 (Fed. Cir. 2002) ........................................................................ 8
20
    *U.S. Valves, Inc. v. Dray,*
21      212 F.3d 1368 (Fed. Cir. 2000) ...................................................................... 4, 5

22  *Univ. of W. Va. v. VanVoorhies,*
        278 F.3d 1288 (Fed. Cir. 2002) ........................................................................ 5
23
    *University of Colo. Found., Inc. v. Am. Cyanamid Co.,*
24      196 F.3d 1366 (Fed. Cir. 1999) ........................................................................ 5

25                                  **STATUTES**

26  35 U.S.C. §§ 101-03, 116-20, 254-56, 261-62 (1994) .................................... 5

27  35 U.S.C. §§ 112, 132(a), 133 ...................................................................... 10

28  35 U.S.C. § 116 .......................................................................................... 6, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

35 U.S.C. § 256 ................................................................................................ 9, 11, 12, 14

35 U.S.C. § 261 .................................................................................................. 6, 7, 10, 14

35 U.S.C. §262 ......................................................................................................... 7, 10

28 U.S.C. § 1338(a) ........................................................................................................ 8

28 U.S.C. § 1367(a) ...................................................................................................... 12

28 U.S.C. § 1447(c) ...................................................................................................... 13

1

**INTRODUCTION**

2       Defendant Konica Minolta Systems Laboratory owns the ten pending patent applications

3  that are the subject of this case.  Plaintiff Altavion filed suit seeking, first and foremost, the

4  following relief:

5               Orders temporarily, preliminarily and permanently –

6               (A) Restraining defendant KONICA-MINOLTA from seeking to exploit
                any rights, either directly or through third parties, with respect to (ten
7               listed) U.S. Patent Applications and any related applications or
                subsequently issued patents… ; [and]
8
                . . .
9
                (C) Ordering defendant KONICA-MINOLTA to recognize ALTAVION's
10              ownership of all patent applications, including those listed above,
                comprising ALTAVION's DST intellectual property.
11

12  (Complaint at p. 24 (¶¶ 1(A), 1(C)).)

13      Granting that relief under any cause of action will require assessing inventorship on the

14  patent applications in suit, which in turn will require analysis of what the patent applications

15  disclose and construing their claims.  The complaint thus raises substantial questions of federal

16  law.  Indeed, Altavion's suit requests an order that would interfere with defendant Konica

17  Minolta's federally created rights to prosecute, assign or license its patent applications.

18  Jurisdiction over federally created rights has long rested with the federal courts.

19      Accordingly, this is *not* – as Altavion contends in its motion for remand – removal on the

20  grounds that the complaint seeks correction of inventorship.  Altavion has not asked for a

21  declaration of inventorship, but rather for much broader relief, including an injunction precluding

22  Konica Minolta from exercising presently existing rights under the patent laws.  Removal was

23  proper and this case belongs in federal court.

24

**THE COMPLAINT**

25      Although Konica Minolta strongly disputes the facts in the Complaint, the justification for

26  removal is premised solely on that document.  Altavion's complaint alleges the following:

27      Dr. Ali Moussa founded Altavion in March 2000 for the purpose of developing reliable

28  methods of optimizing digital document security.  Document security technology is a tool for

1   ensuring the veracity of marketplace transactions and the authenticity of corresponding digital

2   documentation.  Altavion maintains that it created a suite of digital document security solutions

3   that employed a novel set of electronic bar coding techniques, and which fall under the umbrella

4   of Digital Stamping Technology ("DST").  (Complaint ¶¶ 7-8.)

5          Altavion alleges that between the fall of 2002 and the fall of 2003, Dr. Moussa met with

6   Konica Minolta representatives to discuss the prospect of Altavion providing resources for

7   Konica Minolta's scanners.  (*Id*. ¶¶ 10-11.)  Although Altavion's complaint makes it clear that the

8   parties <u>never entered into any product, services, or licensing arrangement</u>, Altavion and Konica

9   Minolta did execute a Confidential and Mutual Non-Disclosure Agreement ("NDA").  (*Id*. ¶ 11)

10  During the meetings and communications between the fall of 2003 and spring of 2004, Altavion

11  alleges that Konica Minolta asked for, and received, information from Altavion regarding its DST

12  intellectual property, including an evaluation copy of Altavion software.  (*Id*. ¶¶ 13-15.)  On or

13  about August 31, 2004, meanwhile, Konica Minolta and Altavion executed a non-binding

14  Memorandum of Understanding ("MOU") 2004.  (*Id*. ¶ 20.)  Altavion alleges that Konica

15  Minolta "discontinued all communication or contact" with Altavion in October 2004 "without

16  providing any articulated reason for terminating communications."  (*Id*. ¶ 22.)

17         The gravamen of Altavion's case, however, is found in a few paragraphs of its 26-page

18  complaint.  Paragraph 23 states:

19              23.  Unbeknownst to Dr. Moussa or ALTAVION, only 6 months
               after signing the NDA and approximately two months before
20             signing the MOU, defendant KONICA-MINOLTA caused to be
               filed the first in a series of United States Patent Applications which
21             disclose ALTAVION's proprietary DST intellectual property and
               identify various KONICA-MINOLTA employees as named
22             inventors, including Wei Ming and Hiroshi Tomita.  Following is a
               list of currently pending KONICA-MINOLTA Patent Applications
23             containing various components of ALTAVION's DST intellectual
               property, which KONICA-MINOLTA caused to be filed without
24             ALTAVION's knowledge or consent. . . .

25             [List of ten U.S. Patent Applications omitted].

26             The available Information Disclosure Statements filed in
               conjunction with the above-referenced KONICA-MINOLTA Patent
27             Applications do not disclose any mention of Dr. Moussa,
               ALTAVION, or its DST intellectual property as cited prior art
28

references for consideration by the United States Patent and Trademark Office.

Paragraph 24 continues:

> 24.  Defendant KONICA-MINOLTA neither informed nor otherwise notified Dr. Moussa or ALTAVION of the above-referenced Patent Application filings.  At no point or time during negotiations with Dr. Moussa or Altavion did . . . [any] KONICA-MINOLTA representative disclose the fact that the above-referenced Patent Applications had been filed and contain ALTAVION's proprietary DST intellectual property. . . .

These allegations are reiterated in some form in each of the complaint's seven causes of action.  (*See, e.g.*, Complaint ¶¶ 28, 34 (first cause of action for trade secret misappropriation), ¶¶ 38, 40 (second cause of action for conversion), ¶¶ 46, 48 (third cause of action for breach of NDA), ¶ 53 (fourth cause of action for unjust enrichment), ¶ 56 (fifth cause of action for § 17200 unfair business practices), ¶¶ 62-63, 67 (sixth cause of action for misrepresentation), ¶ 69 (seventh cause of action for concealment).)  For example, and perhaps most sharply for purposes of this motion, in its misrepresentation claim, Altavion alleges:

> 62. . . . that defendant KONICA-MINOLTA misrepresented to the United States Patent and Trademark Office ("USPTO") the true inventors corresponding to [the listed U.S. Patent Applications].  Specifically in this regard, as each of the pending Patent Applications contain ALTAVION'S proprietary DST intellectual property, Dr. Moussa is a significant and true inventor of the disclosed technology and should be named as an inventor on ach Application.  ALTAVION is informed and believes and based thereon alleges that the omission of Dr. Moussa as an inventor on each of the identified Patent Applications has caused financial damage to ALTAVION, as hereinafter alleged.

(*Id.* ¶ 62.)

Finally, lest there be any doubt that Altavion's complaint arises from Konica Minolta's patent applications, the first thing prayed for in the way of relief is an order "temporarily, preliminarily and permanently … [r]estraining defendant KONICA-MINOLTA from seeking to exploit any rights, either directly or through third parties, with respect to (ten listed) U.S. Patent Applications and any related applications or subsequently issued patents."  (Complaint at p. 24, ¶ 1(A).)  Altavion also asks the court to order "defendant KONICA-MINOLTA to recognize ALTAVION's ownership of all patent applications, including those listed above, comprising

ALTAVION's DST intellectual property." (*Id.* at p. 24, ¶ 1(C).)  Although Altavion also seeks hundreds of millions of dollars in damages, the complaint first and foremost seeks to adjudicate and restrain Konica Minolta's federal patent rights.

## ARGUMENT

There is no question that merely having patents or patent applications involved in a case does not suffice to establish federal question jurisdiction.  On the other hand, as the Federal Circuit has recently reiterated, state law claims that involve underlying issues of patent infringement, validity, inventorship or claim construction all raise a substantial issue of patent law and warrant federal jurisdiction.  *See Immunocept, LLC v. Fulbright & Jaworski, LLP.*, 504 F.3d 1281, 1285-86 (Fed. Cir. 2007).  These very issues permeate Altavion's complaint and underlie each of its claims, and their resolution is <u>necessary</u> to the relief Altavion seeks.

**I.     REMOVAL IS PROPER WHERE THE RELIEF PLAINTIFF SEEKS NECESSARILY DEPENDS ON RESOLUTION OF A SUBSTANTIAL QUESTION OF PATENT LAW**

Removal to federal court is proper where a well-pleaded complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983).  In cases involving patents in particular, jurisdiction extends "to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808-09 (1988).  The Federal Circuit has called this a "lenient standard for jurisdiction."  *U.S. Valves, Inc. v. Dray,* 212 F.3d 1368, 1372 (Fed. Cir. 2000).

It is especially important for federal courts to vigilantly guard their exclusive jurisdiction in cases that depend on patent law because, as the Supreme Court has noted, patent law has evolved to achieve the objective of national uniformity, mandated by the Constitution.  *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank,* 527 U.S. 627, 645 (1999) (discussing "[t]he need for uniformity in the construction of patent law").  The exercise of federal

1  jurisdiction in patent matters also ensures that "[l]itigants will benefit from federal judges who are

2  used to handling . . . complicated [patent] rules." *Immunocept,* 504 F.3d at 1285-86.

3  Accordingly, the Federal Circuit has confirmed jurisdiction over state tort and contract claims

4  under the second *Christianson* prong where substantial issues of patent law were necessary to

5  those claims. *See Immunocept,* 504 F.3d at 1285-86 (malpractice suit involving breadth of patent

6  scope gave rise to federal jurisdiction); *Univ. of W. Va. v. VanVoorhies,* 278 F.3d 1288, 1295

7  (Fed. Cir. 2002) (federal jurisdiction proper where breach of duty to assign claim required

8  resolution of whether disputed patent application is continuation-in-part of prior application); *U.S.*

9  *Valves,* 212 F.3d at 1372 (breach of contract case arose under patent law where determining

10  whether license was breached required determining whether there was infringement); *Hunter*

11  *Douglas v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329-31 (Fed. Cir. 1998) (injurious falsehood

12  claim presented federal question where it required showing of patent invalidity); *Additive*

13  *Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993)

14  (disparagement claim arises under patent law because it required showing of non-infringement).

15       Inventorship is no exception. To the contrary, allowing state courts to adjudicate issues of

16  inventorship would substantially impair the federal/state balance mandated by the Constitution.

17  The Court of Appeals has underscored these dangers.

18       A different state inventorship standard might grant property rights
19  to an individual who would not qualify as an inventor under federal
    patent law, or might grant greater relief to inventors than is afforded
20  by federal patent law. Either situation might frustrate the dual
    federal objectives of rewarding inventors and supplying uniform
21  national patent law standards.… Title 35 contains explicit and
    detailed standards for inventorship. *See, e.g.*, 35 U.S.C. §§ 101-03,
22  116-20, 254-56, 261-62 (1994). Moreover, federal law has
    provided this court with jurisdiction to enforce these comprehensive
23  provisions to provide a uniform national standard for inventorship.
    *See In re Snap-On Tools Corp.*, 720 F.2d 654, 655, 220 U.S.P.Q. 8,
24  9 (Fed.Cir.1983).

25  *University of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999).

26       For a number of reasons, Altavion's complaint meets the second *Christianson* test,

27  making removal appropriate in this case.

28

1

2

      **A.      The Relief Altavion Seeks Depends On Resolution Of A Substantial Question Of Patent Law**

3

4

5

6

7

8

      In making the determination as to whether a case arises under patent law, the Federal Circuit directs courts to "review and analyze the plaintiff's pleadings, with special attention directed to the relief requested." *Bd. of Regents v. Nippon Tel. and Tel. Corp.*, 414 F.3d 1358, 1362 (Fed. Cir. 2005) (citing *Air Prods. Chems., Inc. v. Reichhold Chems., Inc.* 755 F.2d 1559, 1562 (Fed. Cir. 1985)).  The relief Altavion requests cannot be afforded unless substantial questions of patent law are resolved by the Court.

9

10

      **1.      The relief Altavion requests in 1(A) of its prayer for relief requires an inventorship determination**

11

12

13

14

15

16

17

18

      Altavion's complaint first asks for an order restraining Konica Minolta from "seeking to exploit any rights, either directly or through third parties," with respect to (ten listed) U.S. Patent Applications and any related applications or subsequently issued patents.  (Complaint at p. 24, ¶ 1(A).)  But the only way Altavion could be entitled to this relief – which would prevent Konica Minolta from exercising <u>its rights</u> with respect to the patent applications at issue – would be to establish that Dr. Moussa is not just an inventor but the *sole* inventor of what is claimed in the patent applications.  That is because, if Dr. Moussa and the Konica Minolta personnel were <u>both</u> inventors, Altavion and Konica Minolta would <u>both</u> be entitled to exercise their rights.

19

20

21

22

23

24

25

26

      Under the patent laws of the United States, when an invention is made by more than one person, they must each be named on the patent even if "(1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent." 35 U.S.C. § 116. Joint inventors have joint personal property rights in the application or patent, and an "applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent."  35 U.S.C. § 261.  Title 35 is clear, moreover, that the rights of joint owners are separate:

27

28

          [Where there are joint owners of a patent,] absent[t] … any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the

1
2

United States … without the consent of and without accounting to the other owners."

3   35 U.S.C. §262.  Thus, if Konica Minolta's engineers were responsible for any significant part of

4   the invention claimed in the subject patent applications, then the relief Altavion seeks cannot be

5   granted because Konica Minolta would have undivided rights in the applications or the patents

6   that issue from them.  35 U.S.C. §§ 261-62; *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341,

7   344 (Fed. Cir. 1997) ("Each co-owner of a … patent is ordinarily free to make, use, offer to sell,

8   and sell the patented invention without regard to the wishes of any other co-owner. …  Each co-

9   owner's ownership rights carry with them the right to license others, a right that also does not

10  require the consent of any other co-owner.") (citations omitted).

11      This was essentially the basis for assertion of federal jurisdiction in *Rustevader Corp. v.*

12  *Cowatch,* 842 F.Supp. 171 (W.D. Penn. 1993).  In *Rustevader,* the complaint alleged that

13  defendant Cowatch Jr. breached an assignment and confidentiality agreement when he filed a

14  patent application as a joint inventor with his father, Cowatch Sr.  *Id*. at 171-72.  The complaint

15  sought an injunction demanding assignment of the issued Cowatch patent.  *Id.* at 172.  Although

16  the Court agreed that a case against the son alone could be brought based solely on the

17  assignment agreement without requiring resolution of any issue of patent law, the case seeking

18  assignment of the patent was a different matter altogether, because the father, a putative joint

19  inventor, was not a party to the contract.  As a result, the relief plaintiff sought necessarily

20  depended on a determination that the son was the sole inventor; otherwise the relief was

21  unavailable.  *Id.* at 173.

22      The facts here provide an additional federal issue, not necessarily present in *Rustevader,*

23  where both putative inventors were defendants and the plaintiff was not an inventor but an

24  assignee.  Here, Altavion's claim is premised on the allegation that its founder Dr. Moussa is not

25  only *an* inventor (*see, e.g.,* Complaint ¶¶ 23-24, 62-63), but also, if the requested relief is to be

26  granted, the *sole* inventor.  (*Id*. at p. 24, ¶ 1(A).)  Thus, granting the relief that Altavion seeks

27  would require not only a determination that Moussa made a contribution to the properly construed

28  claims, but also a determination that none of the Konica Minolta engineers made a significant

contribution to the properly construed claims. The first part of this inquiry will require, in other words, determining whether Dr. Moussa "made a contribution to the conception of the subject matter," determining what that contribution was, and then construing the claim language to determine whether that "contribution found its way into the defined invention." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1463 (Fed. Cir. 1998). The second part of the inquiry will require finding that any contributions by Konica Minolta engineers did not find their "way into the defined invention," *id.*, or that any Konica Minolta contributions were "insignificant in quality, when that contribution is measured against the dimension of the full invention." *Caterpillar Inc. v. Sturman Indus.*, 387 F.3d 1358, 1377, 1379-80 (Fed. Cir. 2004).

Issues that require resolution of inventorship questions have long been recognized as presenting substantial issues of patent law, supporting federal jurisdiction under 28 U.S.C. § 1338(a). *See Hunter Douglas,* 153 F.3d at 1330-31. Just as critically, these inventorship inquiries will require claim construction, because an "inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each asserted claim to determine the subject matter thereby. The second step is then to compare the alleged contributions of each asserted co-inventor with the subject matter of the properly construed claim to then determine whether the correct inventors were named." *Trovan, Ltd. V. Sokymat S.A.,* 299 F.3d 1292, 1302 (Fed. Cir. 2002) (citations omitted). Claim construction, as the Federal Circuit has recently confirmed, is amongst the most fundamental federal questions in modern intellectual property litigation. It gives rise to federal jurisdiction regardless of the context in which it arises. *See Immunocept,* 504 F.3d at 1285-86 ("[b]ecause patent claim scope defines the scope of patent protection…, we surely consider claim scope to be a substantial question of patent law").[1]

---

[1] In *Immunocept,* the Federal Circuit analyzed whether federal jurisdiction was properly exercised over a malpractice case that alleged that the defendant negligently made a claim drafting error that substantially reduced the scope of what the patent covered. The court concluded that determining claim construction – which defines the scope of patent protection – raises a substantial question of patent law.

1

2

**2.    The relief Altavion requests in 1(C) of its prayer for relief also requires an inventorship determination**

3

Altavion also asks the Court to order Konica-Minolta "to recognize ALTAVION's

4    ownership of all patent applications, including those listed above, comprising ALTAVION's DST

5    intellectual property." (Complaint at p. 24, ¶ 1(C).) This request for relief yields virtually the

6    same result.

7

Although inventorship and ownership are sometimes "separate issues," "[a]t the heart of

8    any ownership analysis lies the question of who first invented the subject matter at issue, because

9    the patent right initially vests in the inventor." *Beech Aircraft Corp. v. Edo Corp.,* 990 F.2d 1237,

10    1248 (Fed. Cir. 1992). This is <u>not</u> a case where ownership could be determined in accordance

11    with an assignment agreement, and thus be considered a matter of state contract law. *Compare,*

12    *e.g., AT&T v. Integrated Network Corp.,* 972 F.2d 1321 (Fed. Cir. 1992) (issue of patent

13    ownership could be determined by the defendants' invention assignment agreements under non-

14    patent law concepts). As the complaint makes clear, there was never any such agreement

15    between the parties here that would have governed assignment of the applications or patents.

16    Instead, Altavion's claim that it is the "owner" of any patent Konica Minolta files on DST

17    technology stems from its allegations that Dr. Moussa is an – or, in fact, the sole – inventor of the

18    claimed inventions. This request for relief again thus arises under federal patent law:

19    determining whether Altavion is entitled to this relief will necessarily require inventorship and

20    claim construction analyses.

21

**B.    Altavion's Argument That Its Own Claims For Relief Are Not Ripe for Purposes Of Determining Jurisdiction Are Incorrect**

22

23

Altavion's motion to remand relies almost entirely on the fact that its complaint involves

24    only patent applications, and not issued patents. (*See* Docket No. 6 (" Motion to Remand") at

25    6-8 §§ 3-5.) This argument takes two forms: first, that there is no justiciable controversy because

26    the patent applications may never mature into issued patents (*id.* at §§ 3, 5); and, second, that

27    there is no statutory jurisdiction for inventorship disputes under 35 U.S.C. § 256 for pending

28    applications (*id.* at § 4). Neither argument holds water.

**1.    The complaint seeks to restrain presently existing rights**

Altavion's argument that its own complaint does not present a justiciable claim for relief because the patent applications may never mature into patents is not well taken.  While it is true that patent applications cannot be the basis for an infringement claim and cannot be declared invalid, that is not the end of the analysis.  Patent applications, according to the patent statute, "shall be assignable in law by an instrument in writing," and an applicant "may in like manner grant and convey an exclusive right under his application."  35 U.S.C. § 261.  Patent applications are valuable assets in the marketplace, and parties that own them license them out regularly.  *See, e.g., Intergraph Corp. v. Intel Corp.*, 241 F.3d 1353, 1354-56 (Fed. Cir. 2001); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 361 F. Supp. 2d 210, 212-13 (S.D.N.Y. 2005); *Shell Oil Co. v. Schering AG*, 1997 U.S. Dist. LEXIS 2236, at **2-3 (D. Del. Feb. 13, 1997).  By the same token, an applicant always has the right to make decisions about what to claim, how to prosecute, or whether to abandon the application in its own interest.  *See, e.g.,* 35 U.S.C. §§ 112, 132(a), 133.

Accordingly, Altavion's request for an order restraining Konica Minolta from "seeking to exploit *any* rights" in the applications or any patents that issue from them, as well as its request for an order compelling Konica Minolta to "recognize ALTAVION's ownership" of the patent applications, are requests to restrain and impede presently existing rights.

The case on which Altavion relies, *GAF Building Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479 (Fed. Cir. 1996), is not to the contrary.  In *GAF,* the Federal Circuit affirmed dismissal of a declaratory judgment complaint sparked by plaintiff's receipt of a cease and desist letter based on a patent that was "about to issue."  *Id.* at 482.  As the court noted, since there was no issued patent for the court to declare "invalid" or "not infringed," the dispute was purely hypothetical and thus not justiciable.  By contrast, the issue here is not infringement and validity but rather inventorship and ownership.  Inventorship and ownership give rise to rights that *can* be exercised with respect to patent applications, and not just issued patents.  *See* 35 U.S.C. §§ 261-262; *Heineken Technical Servs., B.V. v. Darby*, 103 F. Supp. 2d 476, 479 (D. Mass. 2000) (dispute over inventorship on patent applications is substantial enough to convey federal

1   jurisdiction) (citing *Hunter Douglas*, 153 F.3d at 1330).  Altavion's request for relief is deficient

2   in many respects, but ripeness is not one of them.

3                      **2.      Section 256 is not at issue here**

4          Altavion's second argument contends that the cases cited in the notice of removal, *MCV*

5   *Inc. v. King-Seely Thermos Co.* and *Beech Aircraft Corp. v. EDO Corp.,*[2] involved requests for

6   correction of inventorship under 35 U.S.C. § 256, and that such grounds are inapplicable to patent

7   applications.  (Motion to Remand at 6, 9.)  There is no dispute that section 256 applies only to

8   issued patents.  *MCV*, 870 F.2d at 1570.  Indeed, as the Federal Circuit noted in *MCV*, section 256

9   is a statutory procedure enacted to ensure that innocent errors in inventorship would not render

10  issued patents invalid.  *Id.* (citing S. Rep. No. 1979, 82d Cong., 2d Sess. at 7 (1952)).  But that

11  statutory procedure is not at issue here, not least because Altavion's complaint does not seek

12  correction of inventorship and does not allege that the error was without deceptive intent.[3]

13         To the contrary, Altavion's complaint seeks to assert dominion over the patent

14  applications – and to restrain Konica Minolta's exercise of dominion over them – precisely based

15  on the allegation that they were conceived exclusively by Altavion's founder Dr. Moussa.

16  Although, as set forth above, this requires resolution of whether Dr. Moussa is a joint, or even the

17  sole, inventor of the inventions claimed in the patent applications at issue, it does not involve

18  "correction" of a patent under section 256 (or correction of an application under section 116).

19         Similarly, the district court decisions that have denied federal jurisdiction on the ground

20  that section 256 relief was unavailable for patent applications are distinguishable on the same

21  grounds.  *See, e.g., Gens v. SEZ Am., Inc.*, 2007 U.S. Dist. LEXIS 22575, at **9-13 (N.D. Cal.

22  Mar. 19, 2007).  Again, unlike those cases, Altavion does not seek either correction of

23  _____

24         [2] These cases were cited for the broad propositions that a "cause of action that requires an
    inventorship analysis arises under patent law for purposes of federal jurisdiction.  *MCV, Inc. v.*
25  *King-Seeley Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989)" and that "unlike ownership,
    which is often a matter of state contract law, 'inventorship is a question of who actually invented
26  the subject matter claimed in a patent.'  *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248
    (Fed. Cir. 1993)."  (Docket No. 1 ("Notice of Removal") ¶ 9.)

27         [3] There is a statutory provision for seeking correction of inventorship of a patent
    application:  35 U.S.C. § 116(3).
28

1    inventorship, or a declaration of inventorship.  It instead seeks essentially a wholesale transfer of

2    ownership, and an injunction barring Konica Minolta's otherwise lawful actions in connection

3    with its rights under the patent applications.  Section 256 is irrelevant.

4    **II.    BECAUSE FEDERAL JURISDICTION EXISTS, THIS COURT HAS**
         **SUPPLEMENTAL JURISDICTION OVER ALL CLAIMS**
5

6         28 U.S.C. § 1367(a) provides that a district court has "supplemental jurisdiction over all

7    other claims that are so related to claims in the action . . . that they form part of the same case or

8    controversy under Article III of the United States Constitution."  The Ninth Circuit has held that

9    "[n]on-federal claims are part of the same 'case' as federal claims when they derive from a

10   common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try

11   them in one judicial proceeding."  *Kuba v. 1-A Agric. Ass'n,* 387 F.3d 850, 855-56 (9th Cir.

12   2004).

13        All of Altavion's claims in this action arise from such "common nucleus."  The gravamen

14   of each one of Altavion's claims is the allegation that Altavion disclosed its DST technology to

15   Konica Minolta and Konica Minolta put that technology into its patent applications and thus

16   appears to intend to use it.  (*See* Complaint, ¶¶ 28, 34, 38, 40, 46, 48, 53, 56, 62-63, 67, 69.)

17   These are the same operative facts giving rise to Altavion's demand that Konica Minolta be

18   restrained from exercising its rights over its patent applications, and required to recognize

19   Altavion's ownership.  Accordingly, supplemental jurisdiction exists over all of Altavion's

20   claims.

21   **III.    THE COURT SHOULD NOT AWARD COSTS OR FEES TO ALTAVION**

22        **A.    Altavion Relies On A Standard That The Supreme Court Has Rejected**

23        In asking the Court to award it costs and attorney's fees, Altavion cites *Balcorta v.*

24   *Twentieth Century-Fox Film Corp*., 208 F.3d 1102, 1106 n. 6 (9th Cir. 2000), for the proposition

25   that a court may make "an award of fees when a defendant's removal, while 'fairly supportable,'

26   was wrong as a matter of law."  (Motion for Remand at 9.)  That may have been the standard in

27   the Ninth Circuit for a time.  Indeed, the Ninth Circuit cited the *Balcorta* formulation as the test

28   for determining when to award fees just two years later in *Hofler v. Aetna US Healthcare of*

1  *California, Inc.*, 296 F.3d 764, 770 (9th Cir. 2002). *Hofler* confirmed that – at least as of 2002 –

2  an award of fees was "proper when removal [was] wrong as a matter of law, even though the

3  defendant's position may [have been] 'fairly supportable.'" *Id.* (citing *Balcorta,* 208 F.3d at

4  1106). <u>The problem for Altavion is that the United States Supreme Court overruled that standard</u>

5  <u>in 2005.</u>

6      In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005), the Supreme Court

7  granted certiorari to "determine the proper standard for awarding attorney's fees when remanding

8  a case to state court." In a unanimous decision, the Court "resolve[d] a conflict among the

9  Circuits" as to the proper test. *Id.* at 136. The Court noted that some Circuits would not award

10  fees if the defendant's position was "objectively reasonable," while some Circuits would award

11  fees under a much laxer standard. *Id.* at 135-36. One of the cases the Court pointed to as

12  exemplifying the lower threshold was the Ninth Circuit's decision in *Hofler*. *Id.* at 136.

13      After reviewing the underlying policies and the statutory text for 28 U.S.C. § 1447(c), the

14  Supreme Court rejected the very Ninth Circuit test upon which Altavion relies. Now, in deciding

15  whether to award fees and costs to a plaintiff who successfully remands its case back to state

16  court, a federal district court must apply a stricter standard:

17      Absent unusual circumstances, court may award attorney's fees
       under § 1447(c) *only where the removing party lacked an*
18     *objectively reasonable basis for seeking removal.* Conversely,
       when an objectively reasonable basis exists, fees should be denied.
19

20  *Martin*, 546 U.S. at 141 (emphasis added). Properly focused on the correct test, the Court here

21  should deny Altavion's request for attorney's fees. Even if the Court decides to remand this case,

22  the Defendants clearly had an "objectively reasonable basis" for seeking removal based on the

23  relief requested in the Complaint.

24          **B.      Awarding Costs And Fees Would Be Inappropriate Under *Martin***

25      Altavion argues that the two theories put forth in Defendants' notice of removal were

26  wrong as a matter of law. Whether or not Defendants' bases for removing were "wrong," they

27  were "objectively reasonable."

28

1     Plaintiff first complains that federal courts can only make 35 U.S.C. § 256 inventorship

2     determinations on issued patents, not patent applications.  (Motion for Remand at 9.)  As

3     explained above, that is not what removal is based on here.  Defendants agree that this case does

4     not seek statutory inventorship correction under section 256.  To the contrary, resolving

5     Altavion's own requests for relief will require inventorship and claim construction determinations

6     on the pending patent applications, and these are in fact federal questions under the authorities

7     cited above.  This is, at a minimum, an objectively reasonable point.[4]

8     Plaintiff's second contention fares no better.  One of Defendants' bases for removing this

9     case, as discussed above, is that Altavion seeks to restrain Defendants from exercising their rights

10    in specified patent applications.  Altavion contends that this is a baseless ground for removal

11    because the patents have not yet issued.  Altavion maintains that these "'patents' do not exist yet

12    and" its prayer for relief "was only looking ahead to logically plan for a time when wrongfully

13    acquired patents might issue from the ten applications cited in the Complaint, and to prevent the

14    exercise of these rights, should they hypothetically issue."  (Motion for Remand at 9.)  This

15    argument mischaracterizes both Defendants' contention and Altavion's own complaint.

16    On its face, Paragraph 1(A) in the prayer for relief from Altavion's complaint asks the

17    Court to restrain Defendants from "seeking to exploit any rights, either directly or through third

18    parties" with respect to ten of Defendants' "U.S. [p]atent [a]pplications and any related

19    applications or subsequently issued patents."  (Complaint at p. 24, ¶ 1(A).)  The relief Altavion

20    requests is **not** limited to future patents "should they hypothetically issue."  (Motion for Remand

21    at 9.)  As discussed above, Altavion expressly seeks to restrain Defendants' rights in the currently

22    pending patent applications, which, by federal statute, have attributes of personal property that

23    belong to Defendants.  *See* 35 U.S.C. § 261 ("Applications for patent, patents, or any interest

24    therein, shall be assignable in law by an instrument in writing.  The applicant, patentee, or his

---

25

26    [4] Several recent decisions from this Circuit have denied costs where there was a split of
      authority and some case law supported removal.  *See, e.g., Gardner v. UICI*, 508 F.3d 559, 562
27    (9th Cir. 2007); *Hamblin v. Coinstar, Inc*., 2007 U.S. Dist. LEXIS 88705, at **8-10 (E.D. Cal.
      Nov. 21, 2007); *Kozelek v. Jetset Records*, 2006 U.S. Dist. LEXIS 73112, at **3-4 (N.D. Cal.
28    Sept. 25, 2006).

1    assigns or legal representatives may in like manner grant and convey an exclusive right under his

2    application for patent, or patents, to the whole or any specified part of the United States."). There

3    was nothing objectively unreasonable about this ground for removal. It is Altavion's argument on

4    this point that is baseless.

5    Dated: February 4, 2008                    BRYAN WILSON
                                                 MARC J. PERNICK
6                                                LAURA MASON
                                                 MORRISON & FOERSTER LLP
7

8
                                        By:   /s/ Marc J. Pernick
9                                                Marc J. Pernick
                                                 Email: MPernick@mofo.com
10
                                                 Attorneys for Defendants
11                                               KONICA-MINOLTA SYSTEMS
                                                 LABORATORY, INC., AND PAUL
12                                               CATTRONE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28