1  GLENN W. PETERSON, ESQ. (SBN 126173)
   **MILLSTONE PETERSON & WATTS, LLP**
2  *Attorneys at Law*
   2267 Lava Ridge Court, Suite 210
3  Roseville, CA  95661
   Phone:916.780.8222
4  Fax:    916.780.8775

5  JOHN P. COSTELLO, ESQ. (SBN 161511)
   PAMELA W. BERTANI, ESQ. (SBN 182672)
6  **COSTELLO LAW CORPORATION**
   331 J Street, Suite 200
7  Sacramento, CA 95814
   Phone: 916.441.2234
8  Fax :   916.441.4254

9  Attorneys for Plaintiff
   ALTAVION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTAVION, INC. a California corporation, ) | Case No. CV 07 6358 MHP |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND** |
| v. ) | |
| ) | |
| KONICA.- MINOLTA SYSTEMS LABORATORY, INC., ) a corporation; Paul Catrone, AN INDIVIDUAL; ) AND and DOES 1 through 50, inclusive, ) | Date: February 25, 2008 Time: 2:00 PM Ctrm: 15 |
| Defendants. ) | Hon. Marilyn Hall Patel |
| ) | [No Trial Date Set] |

### I.    INTRODUCTION

Defendants contend that a substantial question of patent law exists in the Complaint, which alleges only California state law claims, clearly denominated as such. Defendants ask that the Court disregard the clearly pleaded state law claims in the complaint and focus instead on two paragraphs contained in the prayer for relief. They point to those two paragraphs in an effort to sell the Court that this case is about patent ownership or--more correctly-- patent *application* ownership.

1  It follows, according to the Defendants' reasoning, that federal court determinations of inventorship will be required to sort out the Konica inventors from the Altavion inventors, in order to determine ownership of the inventions underlying the ten patent applications cited in the Complaint. This contention is belied by the complaint's clearly pleaded claims and is soundly negated by well established case law.

This case is not a patent case; it is foremost a trade secret and fraud case, where the trade secrets were misappropriated by fraud. The other state law claims piggyback the trade secret misappropriation and fraud that occurred.

Defendants' efforts to re-cast the claims alleged in the complaint must fail. The cases discussed below show convincingly that federal courts will not hear cases where only patent *applications* are in issue, because such cases lack a "concrete case or controversy." Stated more simply, no justiciable rights are conferred in patent applications. For a federal court, patent applications present a wholly theoretical—some might say speculative—subject matter. Federal courts have long recognized that other forums for adjudicating pre-patent inventorship are more appropriate, especially where, as here, the state law claims alleged raise strong "state interest" issues. Here, California has a strong state interest in the misappropriation claims brought under the California Uniform Trade Secrets Act, Civil Code §§ 3426, et seq.

This strong state interest is not preempted merely because the misappropriated trade secrets may be embodied in a patent application; such reasoning would stand on its head the presumption against preemption. "[W]e assume that the 'historic police powers' of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." [citations]. This presumption against preemption leads us to the principle that express preemption statutory provisions should be given a narrow interpretation. [Citations]" *Air Conditioning and Refrigeration Institute v. Energy Resources*, 410 F.3d 492, 496 (9th Cir. 2005).

/ / /
/ / /
/ / /
/ / /

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

## II.   THE COMPLAINT

The Complaint alleges seven claims that arise under common law or California state statutes;[1] nowhere in the Complaint is relief sought under a federal law which would raise a federal question. While many of the claims relate to trade secrets misappropriated by the defendants, which trade secrets were then utilized (to a presently unknown extent) in ten patent applications, there are no granted patents involved in this case or cited in the Complaint. (See Complaint ¶ 23). To repeat: the Complaint does not identify or otherwise reference a single patent.

Without any issued patents to create a question of federal patent law, the Defendants have now focused on the relief section of the Complaint as their basis for alleging that a substantial question of patent law exists. More specifically, out of a 26-page complaint which alleges only California state law claims, the Defendants have chosen two paragraphs in the prayer, and contend that their reference to patent applications trumps the interests of the State of California in protecting its native companies and inventors from fraud and trade secret misappropriation. The relevant portions of the Complaint which comprise the Defendants' focus are as follows:

> Orders temporarily, preliminarily and permanently –
>
> (A)  Restraining defendant Konica-Minolta from seeking to exploit any rights, either directly or through third parties, with respect to (ten listed) U.S. Patent Applications and any related applications or subsequently issued patents…;[and]
>
> …
>
> (C) Ordering defendant Konica-Minolta to recognize Altavion's ownership of all patent applications, including those listed above, comprising Altavion's DST intellectual property.

(Complaint at p. 24 (¶¶ 1(A), 1(C)).)

## III.   LAW AND ARGUMENT

**A.   The Federal Courts Do Not Adjudicate Inventorship Determinations Involving Patent Applications, Due to the Lack of a Concrete Case or Controversy Which They Present.**

Patent rights are created only upon the formal issuance of letters patent and here no rights have yet been created in the referenced applications to which a federal court's jurisdiction could

---

[1] (1) a state law claim for misappropriation of trade secrets (Civil Code § 3426.1(b)); (2) a common law conversion claim; (3)  a breach of contract claim; (4) a common law unjust enrichment claim; (5) a state law claim for unfair business practices (Bus. & Prof. Code §§ 17200 et seq.); (6) a common law fraud claim based upon misrepresentation; (7) a common law fraud claim based upon concealment

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

attach. See *GAF Building Materials Corporation v. Elk Corporation of Dallas* 90 F.3d, 479, 483 (Fed. Cir.1996). A case or controversy must be *definite and concrete* and cannot be of a hypothetical or abstract character. See *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937). Cases involving patent applications are of the hypothetical variety in which federal courts avoid getting involved. *GAF*, 90 F.3d at 482.

Defendants attempt to distinguish *GAF*, arguing that it is inapplicable because it involves determinations of *validity* and *infringement* of patent applications, rather than issues of inventorship and ownership, which they contend are central to this action. (See Defendant's Memorandum, page 10). In fact, *GAF* is applicable to any case involving <u>patent applications</u>, whether the patent law issue is one of validity, infringement, inventorship or ownership. The type of patent law issue is irrelevant; what is relevant is that <u>a court cannot render opinions with any certainty where patent applications are involved</u> because the inherently theoretical nature of a patent *application*. In pertinent part, *GAF* states:

> "The complaint alleged a dispute over the validity and infringement of a possible *future* patent not then in existence. <u>The district court did not know with certainty whether a patent would issue or, if so, what legal rights it would confer upon Elk</u>. Thus the dispute was purely hypothetical and called for an impermissible advisory opinion."

*GAF*, 90 F.3d at 482 (emphasis ours).

In this case, there are no issued patent applications, and under *GAF*, this case cannot be ripe for adjudication in federal court, regardless of whether the underlying patent issue is one of validity or inventorship.

In Sections I(A) - I(B)(1) (pgs. 6-11) of their Memorandum, Defendants have cited a plethora of cases and statutes to support a showing that Paragraphs 1(A) and 1(C) of the Complaint create issues of patent inventorship which need to be settled in federal court by an inventorship determination. These cases are facially inapposite because most of them involved issued patents where federal jurisdiction clearly attached under 28 U.S.C. § 1338(a),[2] or else were brought under the federal Declaratory Judgment Act ("DJA") (see, e.g., *Heineken Technical Servs., B.V. v. Darby*,

---

[2] See Appendix I which catalogues all of the issued patents which were adjudicated in each case cited by the Defendant in its Memorandum.

4

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

1  103 F. Supp2d 476, 479 (D. Mass. 2000)), where, again, it was easy for the court to find federal
2  jurisdiction because the plaintiff alleged claims for relief under a federal statute (the DJA).

3      *Display Research Labs. v. Telegen Corp.*, 133 F. Supp. 2d 1170 (N.D. Cal. 2001) is a
4  Northern District of California case, not cited by the Defendant, which is worth mentioning. It is
5  instructive in that it considers the question of whether 35 U.S.C. § 116 invokes a substantial issue of
6  patent law absent any pleading under the DJA as was the case in *Heineken*. While the original
7  *Display* complaint filed by the Plaintiff was under the DJA, the Defendant's counterclaims relating
8  to §116 did not invoke the DJA. *Display,* 133 F.Supp. 2d at 1172. Section 116 provides in
9  pertinent part:

10      whenever through error a person is named in an application for patent as the inventor, or
11      through error an inventor is not named in an application, and such error arose without any
    deceptive intention on his part, the Commissioner may permit the application to be amended
12      accordingly, under such terms as he proscribes.

13      The District Court held that no jurisdiction attaches in matters of Section 116 because it was
14  the Commissioner of Patents' domain, and not the federal courts, to decide matters involving
15  inventorship relating to patent applications where an inventor was omitted by innocent error. *Id.* at
16  1173. The court in *Display* went on to note-- on the point of patent application inventorship
17  determinations-- that the availability of <u>alternative remedies</u> for sorting out inventorship was key in
18  its decision to refrain from hearing the case. *Display* at 1175. In *Display*, Section 116 was cited as
19  just such an alternative remedy available at the Patent Office, but this case did not place any
20  limitations on the types of remedies that a Plaintiff might seek to resolve inventorship in patent
21  applications. *Id.* Most importantly, it did not prohibit state remedies which are applied to resolve
22  issues of inventorship and invention ownership.

23      From the *GAF* and *Display* cases it is apparent that the federal courts <u>are not proper forums</u>
24  for adjudicating disputes involving inventorship and ownership in patent *applications*. This is
25  because of the hypothetical nature of adjudicating a patent application, and because when other
26  remedies are available in other forums, the federal courts follow a well-developed policy of
27  abstention, and allow such cases to be resolved in those other forums.
28  / / /

**B. Theft of Trade Secrets by Fraud is the Central Theme of This Case and the California Uniform Trade Secrets Act (CUTSA) is Intended to Occupy This Field.**

Defendants' assertion of the need to engage in an inventorship determination is a red herring, calculated to misdirect this Court's focus from the fact that theft of trade secrets by fraud is really what is at issue here. Fraud was used by Defendants to acquire possession of Altavion's trade secrets (See Complaint ¶¶ 20, 23, 25-34, 60-67, 68-72). The State of California has a strong interest in adjudicating this case to ensure that the trade secrets of its native companies and inventors remain safe from theft by the type fraud perpetuated by Defendants upon Altavion. Furthermore, inventorship is germane to both trade secret law and patent law. (See *Kewanee v. Bicron*, 416 U.S. 470 (1974)). The California state courts are fully capable of determining inventorship of the trade secrets in this matter, and therefore, the federal courts are not needed to resolve any inventorship disputes in this case.

Also, in matters of preemption, the Supremacy Clause cannot encroach on the California Uniform Trade Secrets Act (CUTSA). Pursuant to the Supremacy Clause, U.S. Const. Art. VI, cl. 2, federal law preempts state law when there is an "express preemption by statute." *Air Conditioning & Refrigeration Inst. V. Engerg7y Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 495 (9th Cir. 2005). However, the CUTSA is not an area that is open to federal preemption because the CUTSA was intended to occupy the field of trade secret law. (See e.g. *B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 508 (9th Cir. 2006); *Airdefense, Inc. v. Airtight Networks, Inc.*, 2006 U.S. Dist. LEXIS 55364 (N.D. Cal. 2006)). This is all the more reason why remand is both necessary and appropriate.

**(i) The CUTSA (Cal. Civ. Code §3426 et seq.) Provides Remedies for Trade Secret Theft; Including Possibly the Remedy of Patent Reassignment**

The CUTSA specifically prescribes the remedies that are available to the complaining party in an action for misappropriation of trade secrets. It states in relevant part:

> (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

6

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

> (b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.
>
> (c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

Cal. Civ. Code §3426.2

In addition to the injunctive remedy and other the relief noted above, which is allowed under the CUTSA, there is an open question as to whether a Plaintiff may seek the remedy of patent reassignment under the CUTSA in the state courts of California. Historically, for decades, in pre-CUTSA cases, patent reassignment was ordered when trade secrets were stolen and published in patents or patent applications. (See, e.g., *Shellmar Products Co., v. Allen-Qualley Co.*, 87 F.2d 104, 105 (7th Cir. 1937; *Saco-Lowell Shops v. Reynolds*, 141 F.2d 587, 598 (4th Cir. 1944); *Colgate-Palmolive Co. v. Carter Products, Inc.*, 230 F.2d 855, 865 (4thCir. 1956); *Richardson v. Suzuki Motors Co., Ltd*. 868 F.2d 1226, 1249-1250 (Fed. Cir. 1989)).

Recently, however the 9th Circuit has <u>suggested</u> that patent reassignment may not be available under the CUTSA:

> Although California courts have not interpreted whether patent reassignment is an available remedy for trade secret misappropriation, the plain meaning of section 3426.2 <u>suggests</u> (emphasis ours) that it is not. Section 3426.2 states that injunctive relief is only available to *protect* a trade secret. Once a trade secret has been widely disclosed, it is no longer secret and does not merit injunctive relief.

*B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 508-09 (9th Cir. 2006).

The *B.Braun* decision has created some confusion and it may not be citable as precendent, so it is unclear how much weight this decision carries.[3] However, what is clear from *B. Braun* is (1) that it <u>did not conclusively state that patent reassignment was unavailable under the CUTSA</u>, it only <u>suggested</u> that it was; and (2) it did not prohibit other non-CUTSA legal theories, such as contractual theories, from forming the basis for patent reassignment. (See Appendix 2).

---

[3] See Appendix 2, Gray, "The Availability of Patent Reassignment for Trade Secrets Misappropriation" Intellectual Property Today, Vol. 14, No. 11 Page 24 (November 2007).

7

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

The availability of patent reassignment in the California state courts is important because it goes directly to the issues of inventorship and invention ownership. Therefore, the inventorship and ownership issues raised by the Defendants as a result of paragraphs 1(A) and 1(C) in the prayer of Plaintiff's Complaint can be resolved by state court determinations of the true inventors and by the remedy of patent reassignment when the rightful inventors are identified. This meets the <u>alternative remedies</u> requirement of *Display Research Labs. v. Telegen Corp.*, 133 F. Supp. 2d 1170, 1175 (N.D. Cal. 2001), and again punctuate the propriety of remanding this action.

### (ii) This Case Involved a Breach of Contract Claim, Which May Serve as an Independent Basis for the Remedy of Patent Reassignment

This case alleges breach of an non-disclosure agreement ("NDA"), (Complaint ¶¶41-49) wherein the NDA was signed by Konica for purposes of protecting Altavion's trade secrets (Complaint ¶¶20 and 21). The key to Altavion obtaining the reassignment of the patent applications may further lie in the NDA. With the potential application of the CUTSA and the existence of the NDA as two routes for obtaining the remedy of patent reassignment, this court should feel secure that the <u>alternative remedy</u> prong of *Display Research Labs* has been amply satisfied here.

### (iii) Should This Court Still Have Doubts Concerning Whether the Exercise of its Jurisdiction is Proper, Doubts Favor Remand.

Where there is any substantial doubt concerning jurisdiction of a federal court on removal, the case should be remanded; <u>jurisdiction should be retained only where it is clear</u>. See *Town of Freedom, Okl. v. Muskogee Bridge Co., Inc.,* 466 F.Supp. 75 (D.C.Okl., 1978). Similarly, where there is a possibility of a later determination that district court lacks jurisdiction of the removed action, and that, even after trial and judgment, a remand might be ordered, caution recommends that in an uncertain or close case early remand to state court would be the preferred procedure. *Douglass v. Park City Associates,* 331 F.Supp. 823 (D.C.Pa., 1971).

### C. Plaintiff Should Recover Costs and Attorneys' Fees

Defendants cited the case of *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005) as containing the current legal standard for recovering costs and attorney's fees under 28 U.S.C. § 1447(c). The standard in *Martin* provides:

8

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

> Absent unusual circumstances, court may award attorney's fees under §1447(c), <u>only where the removing party lacked an objectively reasonable basis for removal</u>. Conversely, when an objectively reasonable basis exists, fees should be denied (emphasis ours).

*Martin*, 546 U.S. at 141.

Defendants were objectively unreasonable in removing this case for the following reasons: 1) An objective read of the Complaint would have showed the reader that this case is about fraud and trade secret misappropriation, and not patents; 2) No issued patents are ever alleged to have been in issue in any objective context in the Complaint; 3) It is objectively clear that this case involved ten patent applications and no patents (See Complaint at ¶ 23); 4) It is objectively clear that the Complaint alleges only seven California state law causes of action (See Complaint pages 11-end); 5) The *GAF* case clearly stated that cases involving patent applications alone, with no other federal nexus, are of a hypothetical character and possess no modicum of concreteness of rights, which could be adjudicated by a federal court. *GAF Building Materials Corporation v. Elk Corporation of Dallas* 90 F.3d, 479, 482 (Fed. Cir. 1996); 6) The *Display* case, which was never mentioned by the Defendant, made it clear that the Northern District of California had already decided that if issues of inventorship in patent applications can be resolved by other forums, that the federal courts should refrain from hearing such issues. *Display Research Labs. v. Telegen Corp.*, 133 F. Supp. 2d 1170, 1175 (N.D. Cal. 2001); 7) The state courts of California provide just such a forum for adjudicating ownership and inventorship of trade secrets present in patent applications; 8) Instead of heeding the *GAF* and *Display* cases (which are objectively easily found by anyone with a computer and an internet connection), the Defendant offered a boat-load of irrelevant cases involving issued patents, where patent jurisdiction was clearly apparent (See Appendix 1).

///
///
///
///
///
///
///

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

The Plaintiff respectfully requests the court to entertain these objective facts and award its costs and attorneys fees.

DATED:  February 11, 2008                     **MILLSTONE PETERSON & WATTS, LLP**
*ATTORNEYS AT LAW*


                                              By:_____/s/_____
                                                       GLENN W. PETERSON

                                              Attorneys for Plaintiff,
                                              ALTAVION, INC.

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this e-filed document.

**MILLSTONE PETERSON & WATTS, LLP**
*Attorneys at Law*
/s/ Glenn W. Peterson

10

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND

# APPENDIX 1

The following lists the cases cited in Section I(A) to I(B)(1) of Defendant Konica's Memorandum, which all involved <u>issued patents</u>; the patents associated with each case are shown in bold type next to the case cite (in order of appearance):

*Bd. Of Regents v. Nippon Tel. and Tel. Corp.,* 414 F.3d 1358, 1362 (Fed. Cir. 2005) – **U.S. Patent No. 5,910,382**

*Air Products Chems., Inc. v. Reichhold Chems., Inc.* 755 F.2d 1559, 1562 (Fed. Cir. 1985) – **U.S. Patent No. 3,708,388**

*Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) - **U.S. Patent No. 4,472,382**

*Rustevader Corp. v. Cowatch*, 842 F.Supp. 171 (W.D. Penn. 1993) – **U.S. Patent No. 4,767,512**

*Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed Cir. 1998)- **U.S. Patent No. 4,535,773**

*Caterpillar, Inc. v. Sturman Indus.*, 387 F.3d 1358 (Fed. Cir. 2004) – **U.S. Patent Nos. 5,460,329; 5,640,987; and 5,479,901**

*Hunter Douglas v. Harmonic Designs* 153 F.3d 1318 (Fed. Cir. 1998) – **U.S. Patent Nos. 5,391,967; 5,495,153; and 5,517,094**

*Trovan , Ltd., v. Sokyman S.A.*, 299 F.3d 1292 (Fed. Cir. 2002) - **U.S. Patent No. 5,281,855**

*Immunocept, LLC v. Fullbright & Jaworski, LLP,* 504 F.3d 1281 (Fed. Cir. 2007) – **U.S. Patent No. 5,571,418**

*Beech Aircraft Corp. v. Edo Corp.*, 990 F.2d 1237 (Fed. Cir. 1992) - **U.S. Patent No. 4,782,064**

*AT&T v. Integraged Network Corp.*, 972 F.2d 1321 (Fed. Cir. 1992) - **U.S. Patent No. 4,489,972**

*Integraph Corp. v. Intel Corp.*, 241 F.3d 1353 (Fed. Cir. 2001) – **U.S. Patent Nos. 4,860,192; 4,884,197; 4,933,835; and 5,091,846**

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.,* 361 F.Supp.2d 210 (S.D.N.Y. 2005) - **U.S. Patent Nos. 5,737,054; 6,012,811; and 6,092,896**

*Shell Oil Co. v. Schering AG*, 1997 U.S. Dist. LEXIS 2236 (D.Del. 1997)– **U.S. Patent No. 5,326,859**

REPLY MEMORANDUM SUPPORTING MOTION TO REMAND