# EXHIBIT 1

1  BRYAN WILSON (BAR NO. 138842)
   Email: BWilson@mofo.com
2  MARC J. PERNICK (BAR NO. 160591)
   Email: MPernick@mofo.com
3  LAURA MASON (BAR NO. 252251)
   Email: LMason@mofo.com
4  MORRISON & FOERSTER LLP
   755 Page Mill Road
5  Palo Alto, California 94304-1018
   Telephone: (650) 813-5600
6  Facsimile: (650) 494-0792

7  Attorneys for Defendants
   KONICA-MINOLTA SYSTEMS LABORATORY, INC.,
8  AND PAUL CATTRONE

9                UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTAVION, INC., a California corporation, | Case No. CV 07-06358 MHP |
| Plaintiff, | **DEFENDANTS' SUR-REPLY IN OPPOSITION TO MOTION TO REMAND** |
| v. | |
| KONICA-MINOLTA SYSTEMS LABORATORY, INC., a corporation; PAUL CATTRONE, an individual; and DOES 1 through 50, inclusive, | Date: February 25, 2008<br>Time: 2:00 p.m.<br>Ctrm: 15<br>Hon. Marilyn Hall Patel |
| Defendants. | [No Trial Date Set] |

DEFENDANTS' SUR-REPLY ON MOTION TO REMAND
CASE NO. CV 07-06358 MHP
pa- 1233187

Altavion's Reply repeatedly contends that its case is essentially one about trade secret misappropriation and fraud.  But Altavion seeks sweeping relief that ventures far beyond the remedies contemplated by the CUTSA, and far beyond those a state court can grant.  Altavion is not seeking just money damages, declaratory relief, or an injunction barring further use of its alleged trade secrets.  Altavion also requests an order "restraining" Konica Minolta from doing anything to exploit Konica Minolta's own patent applications, and "directing" Konica Minolta to "recognize" Altavion's ownership of the applications.  Critically, Altavion has not disclaimed these requests for relief, nor does Altavion deny that these requests are premised on a determination of inventorship.

Accordingly, the relief Altavion seeks will require a Court – either this one or the San Mateo Superior Court – to construe the claims and assess inventorship on the subject patent applications.  It is well established that there is exclusive federal jurisdiction for these tasks, and none of Altavion's new arguments casts doubt on that conclusion.

Defendants respond specifically to five points raised in Altavion's Reply.

### 1. **Altavion cannot obtain "reassignment" of the patent applications as a remedy under the California Uniform Trade Secrets Act ("CUTSA").**

For the first time, in its Reply, Altavion contends that a court can order reassignment of Konica Minolta's ten patent applications as a remedy for trade secret misappropriation. (Docket No. 12 ("Reply") at 6-8.)  But as Altavion acknowledges, the Ninth Circuit has held that reassignment of patent rights is not an available remedy under the CUTSA.  *See B. Braun Med., Inc. v. Rogers*, 163 Fed. Appx. 500, 508-09 (9th Cir. 2006).

In *B. Braun*, the Court analyzed the forms of injunctive relief available under Section 3426.2 of the CUTSA.  Subsections (a) and (b) of this provision govern the circumstances and conditions under which courts can enjoin or prohibit misappropriation that is ongoing or threatened. These are "negative" or "prohibitory" injunctions. On the other hand, subsection (c) speaks to "positive" or "mandatory" injunctions.  It states that "[i]n appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order." Cal. Civil Code

DEFENDANTS' SUR-REPLY ON MOTION TO REMAND  
CASE NO. CV 07-06358 MHP

1

pa-1233187

§ 3426.2(c) (emphasis added).  Reassignment of patent applications would be an "affirmative act."

The Ninth Circuit recognized in *B. Braun* that, on its face, Section 3426.2(c) of the CUTSA only authorizes mandatory injunctions "to protect a trade secret." *B. Braun Med.*, 163 Fed. Appx. 508-09.  It therefore held that when a patent containing a plaintiff's trade secret had already been published, the remedy of patent reassignment is "an impermissible form of injunctive relief … because [the] CUTSA only permits injunctive relief to the extent that it is necessary to protect a trade secret." *Id.* at 509.  Once a trade secret is published – such as in a published patent application – the supposed trade secret is no longer secret, and the "affirmative act" of reassignment under Section 3426.2(c) would not "protect" the trade secret. *Id.*[1]

Altavion posits that *B. Braun* was equivocal and that it merely "suggested" that reassignment is unavailable under the CUTSA.  Not so.  More than once, the Ninth Circuit made its holding clear.  It said: "[t]he district court erred when it granted equitable relief in the form of patent reassignment because that remedy is not permitted by California law," *Id.* at 508, and "because the remedy [of reassignment] fashioned by the district court was not permitted under applicable California law, the district court erred in ordering it." *Id.* at 509.

Altavion also maintains that *B. Braun* has created "some confusion" (Reply at 7), but the only support it provides is one article in which the author disagrees with the Ninth Circuit's decision.  That article, however, fails to appreciate Section 3426.2's distinction between prohibitory injunctions in subsections (a) and (b), and mandatory injunctions in subsection (c), and therefore wrongfully concludes that *B. Braun* misinterpreted the CUTSA.  It didn't. *B. Braun* was correctly decided, and the remedy of patent reassignment is not something Altavion can obtain as a remedy for trade secret misappropriation.

---

[1] The Ninth Circuit distinguished one case pointed to by Altavion (*i.e., Richardson v. Suzuki Motors Co., Ltd.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989)), on the ground that it was not decided under the CUTSA.  The other cases relied upon by Altavion are also pre-CUTSA.

DEFENDANTS' SUR-REPLY ON MOTION TO REMAND
CASE NO. CV 07-06358 MHP
pa- 1233187

2

### 2. Altavion cannot obtain "reassignment" of the patent applications as a remedy for its breach of contract claim either.

Altavion's new argument that a state court could reassign the patent applications to it as a remedy for its breach of NDA claim fares no better. Altavion seems to suggest that, if it prevails on its breach of contract claim, a court could order reassignment of the subject patent applications as a form of specific performance. (Reply at 8.)

But specific performance of the contract at issue here could never result in reassignment of the patent applications to Altavion. "[A]s our high court made clear in *Ellis*, an action for specific performance *affirms the contract and asks that it be performed*." *Benhiwal v. Mix*, 147 Cal. App. 4th 621, 638 (2007) ((italics in original) (citing *Ellis v. Mihelis*, 60 Cal. 2d 206, 220 (1963) ("If the court orders [the contract] to be performed, the decree should as nearly as possible require performance in accordance with its terms.").) Altavion's breach claim concerns a standard NDA, which contains no provision regarding ownership of any patents or inventions. There is no assignment agreement – such as is common between employers and employees – in this case. Accordingly, even if Altavion established a right to specific performance, performance of the NDA could not possibly result in reassignment of the patent applications. Altavion's attempt to link the remedy of reassignment to its breach claim is meritless.

### 3. The Federal Circuit's *GAF* case is not "applicable to any case involving patent applications."

Switching tacks, Altavion also argues that a court cannot decide ownership because the dispute is not ripe. Altavion continues to rely upon *GAF Building Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479 (Fed. Cir. 1996), for the proposition that "cases involving patent applications are of the hypothetical variety in which federal courts avoid getting involved." (Reply at 4.) But *GAF* has no bearing here.

The dispute in *GAF* was not justiciable because it involved issues of infringement and validity. Before a patent issues, there can be no cause of action for infringement and it is true that the owner of the application does not have a right to exclude putative infringers. The dispute that Altavion has placed in issue here, by contrast, is not infringement or validity. The question is

DEFENDANTS' SUR-REPLY ON MOTION TO REMAND
CASE NO. CV 07-06358 MHP
pa- 1233187

3

1  who owns and who invented the patent applications.  The dispute over these real and valuable
2  assets – which can be bought, sold, licensed, *etc*. – is ripe.  Accordingly, Altavion's contention
3  that "*GAF* is applicable to any case involving patent applications, whether the patent law issue is
4  one of validity, infringement, inventorship or ownership" (Reply at 4), is simply untrue.

5  Indeed, Altavion's point was squarely rejected in *Kosower v. Gutowitz*, 2001 U.S. Dist.
6  LEXIS 19111 (S.D.N.Y. November 21, 2001).  In *Kosower*, plaintiff sought a declaration that he
7  was an inventor on pending patent applications filed by defendant.  *Id*. at *2, *19.  Defendant
8  moved to dismiss on the ground that the court lacked subject matter jurisdiction to decide
9  inventorship on a pending application, and relied on only one Federal Circuit case:  *GAF*.  *Id*. at
10  **19-21, n.6.  The court denied the motion to dismiss and distinguished *GAF* just as Defendants
11  do here:

> … *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479 (Fed. Cir. 1996), held only that a court cannot adjudicate a validity and infringement suit over a future patent because the dispute was purely hypothetical.  In this case, the plaintiff seeks to correct a pending application and does not seek an adjudication of the validity or infringement of the yet-to-be-issued patent.

16  *Id*.  *See also Heineken Technical Servs., B.V. v. Darby*, 103 F. Supp. 2d 476, 479 (D. Mass. 2000)
17  (inventorship dispute on patent applications gives rise to federal jurisdiction).

### 4. **That Altavion's claims are based on state law does not matter.**

19  Altavion also repeatedly emphasizes in its Reply that its complaint only recites causes of
20  action that emanate from state law.  This does not matter.  Even when a plaintiff asserts state tort
21  or contract claims, federal courts have exclusive jurisdiction when the "well-pleaded complaint
22  establishes … that the plaintiffs' right to relief necessarily depends on resolution of a substantial
23  question of federal patent law, in that patent law is a necessary element of one of the well-pleaded
24  claims." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808-09 (1988).  In making
25  this determination, the Federal Circuit directs courts to "review and analyze the plaintiff's
26  pleadings, with special attention directed to the relief requested." *Bd. of Regents v. Nippon Tel.*
27  *and Tel. Corp.*, 414 F.3d 1358, 1362 (Fed. Cir. 2005) (citing *Air Prods. Chems., Inc. v. Reichhold*
28  *Chems., Inc.* 755 F.2d 1559, 1562 (Fed. Cir. 1985)).

Relying on the *Christianson* standard, the Federal Circuit has found exclusive federal jurisdiction over a range of state claims when the relief sought hinged on resolving a question of patent law. *See Immunocept, LLC v. Fulbright & Jaworski, LLP.*, 504 F.3d 1281, 1285-86 (Fed. Cir. 2007); *Univ. of W. Va. v. VanVoorhies*, 278 F.3d 1288, 1295 (Fed. Cir. 2002); *U.S. Valves, Inc. v. Dray,* 212 F.3d 1368, 1372 (Fed. Cir. 2000); *Hunter Douglas v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329-31 (Fed. Cir. 1998); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir. 1993). As shown in Defendants' Opposition, the relief Altavion requests will similarly require resolving questions of claim construction and inventorship. Federal jurisdiction is thus proper. If Altavion wanted to proceed in state court, it should have sought more conventional forms of relief, like monetary damages and an injunction barring future use.

### 5. The *Display Research Labs*. case does not help Altavion.

Altavion's Reply (at 5) also highlights this Court's decision in *Display Research Labs. v. Telegen Corp.*, 133 F. Supp. 2d 1170 (N.D. Cal. 2001). That case – which dismissed three causes of action concerning inventorship questions on pending patent applications – is inapposite.

*Display Research* involved two types of challenge to inventorship, neither of which are applicable here. The first counterclaim sought correction of inventorship on pending applications. Judge Illston held that the court had no statutory jurisdiction to correct inventorship on an application – as opposed to on an issued patent – and thus dismissed the claim. *Id*. at 1173-74. In this case, however, there is no request for correction of inventorship under the patent statutes.

The other dismissed claims sought a declaratory judgment over the inventorship and ownership of the subject applications. Judge Illston found that the Court had discretionary jurisdiction over the inventorship dispute but declined to exercise it, dismissing the claim. *Id*. at 1175-76. As for the ownership dispute, Judge Illston noted that "[t]he Court could not find, and Telegen did not cite, any statutes or cases governing the ownership of patent applications which incorrectly identify the inventor of underlying technology." *Id.* at 1175. As a result, the court

1  concluded that rights in patent applications are too inchoate and uncertain to support a declaratory

2  judgment claim regarding ownership of the underlying applications. *Id.* [2]

3      This holding, however, does not help Altavion. Unlike Telegen, Konica Minolta *did* cite

4  cases showing that courts can and do resolve inventorship disputes that relate to patent

5  applications. *See, e.g., Heineken*, 103 F. Supp. 2d at 478-79, and *Kosower*, 2001 U.S. Dist.

6  LEXIS 19111 at **19-21. More importantly, here, Altavion is not seeking a declaration of

7  ownership of an application, but rather an order restraining Konica Minolta from exercising any

8  rights in relation to the patent. As noted in Konica Minolta's opposition brief, this restraint would

9  have a real and immediate effect on Konica Minolta's rights to prosecute, assign, or license the

10 applications. *See, e.g.,* 35 U.S.C. §§ 261. Judge Illston's dismissal of declaratory judgment

11 counterclaims in *Display Research* does not defeat federal jurisdiction over plaintiff's claim for

12 affirmative injunctive relief in this case.

13     \*    \*    \*

14     In the end, these critical facts remain: Altavion can only be entitled to the relief it seeks if

15 its inventor, Dr. Ali Moussa, was the sole inventor of the ten subject pending patent applications.

16 Determining whether this is the case will require <u>some court</u> to construe the claims in those

17 applications, and then to determine what inventive contributions were made by Moussa and what

18 inventive contributions were made by Defendants. These are both inquiries that only federal

19 courts are authorized to perform. *Immunocept,* 504 F.3d at 1285-86; *Univ. of W. Va. v.*

20 *VanVoorhies*, 278 F.3d at 1295; *Hunter Douglas,* 153 F.3d at 1330-31; *Rustevader Corp. v.*

21 *Cowatch,* 842 F.Supp. 171, 172-73 (W.D. Penn. 1993). This case belongs in federal court.

---

[2] The cases cited by *Display Research* bear little relation to the question of justiciability of ownership or inventorship disputes on patent applications. In *Sarkes Tarzian, Inc. v. United States*, 159 F. Supp. 253 (S.D. Ind. 1958), the court considered the proper accounting treatment of patent applications for tax purposes. *Id*. at 256 ("The plaintiff possessed a property right with its ownership of the applications for patents….. The applications for the patents, although property under the Revenue Act, are not subject to depreciation thereunder as they are inchoate rights which mature into a depreciable asset beginning with the date a patent issues therefrom…. Plaintiff's claim for refund based on its claim of deduction for depreciation …is therefore denied"). In *Westinghouse Electric & Mfg. Co. v. Formica Insulation*, 266 U.S. 342, 352-53 (1924), the Court discussed the applicability of the assignor estoppel doctrine in situations where the assignment occurred before the patent issued.

DEFENDANTS' SUR-REPLY ON MOTION TO REMAND
CASE NO. CV 07-06358 MHP
pa- 1233187

6

| | | |
|---|---|---|
| 1 | Dated: February 15, 2008 | BRYAN WILSON |
| 2 | | MARC J. PERNICK |
| | | LAURA MASON |
| 3 | | MORRISON & FOERSTER LLP |

By:  /s/ Marc J. Pernick
    Marc J. Pernick
    Email: MPernick@mofo.com

Attorneys for Defendants
KONICA-MINOLTA SYSTEMS
LABORATORY, INC., AND PAUL
CATTRONE